IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DONALD AND BONNIE POLLARD,
et al.

                    Plaintiffs,                    Case No. 3:23-CV-135-wmc

          v.

JOHN JOHNSON, SR.,
et al.

                    Defendants.

---

**Defendants' Response to
Plaintiffs' Proposed Findings of Fact in Support of Amended Motion for
Preliminary Injunction**

---

The Defendants respond to the Plaintiffs' Proposed Findings of Fact in Support of Amended Motion for Preliminary Injunction, Dkt. 29, as follows, under the requirements of the Court's "Procedure to be Followed on Motions for Injunctive Relief."[1] The Defendants specifically retain the right to object to the proposed findings of fact, even where not disputed, as irrelevant or immaterial to the resolution of the Plaintiffs' Amended Motion for Preliminary Injunction or Plaintiffs' claims in the lawsuit.

## <u>Jurisdiction, Venue, and Partial Summary</u>

1.      Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution, laws, or treaties of the United States. More specifically, this action requires the interpretation of federal laws regarding Indian reservation roads and tribal

---

[1] The Defendants have made a concerted effort to respond in good faith to each alleged "factual" assertion in the Plaintiffs' filing, despite many of the included paragraphs being statements of law, legal conclusions, or cumulative and repetitive.

transportation systems, including without limitation the Federal-Aid Highway Act of 1956, 23 U.S.C. §101 et seq. (the "Federal-Aid Highway Act"), as amended, and its Tribal Transportation Program, 23 U.S.C. §§ 201–202 (the "Tribal Transportation Program"), and implementing regulations at 25 C.F.R. Part 170 (the "federal Tribal Transportation Program implementing regulations"), and a question grounded in federal Indian common law. (Amended Complaint ("Am. Compl.") ¶ 3.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The roads at issue are no longer listed on the National Tribal Transportation Facilities Inventory ("NTTFI"), J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I., so the Court does not have a question arising under federal laws regarding Indian reservation roads to resolve.

2.      Defendants are the officers and members of the Tribal Council of the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe"). (Am. Compl. ¶ 4.)

**Response**: Undisputed.

3.      Between at least January 31, 2023 and March 13, 2023, Defendants violated the Federal-Aid Highway Act by erroneously asserting that they have a "right to limit access" to certain public roadways in the Town of Lac du Flambeau, Wisconsin (the "Town") and by barricading, or causing to be barricaded, four public roads in Lac du Flambeau, Wisconsin (Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane (individually, "Roadway," and collectively, the "Roadways")). (Am. Compl. ¶ 4.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11.

Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open.

4.      On March 13, 2023, Defendants partially deconstructed the barricades on the Roadways. However, Defendants did so only after they received compensation from the Town to issue to the Town conditional, revocable and temporary access permits (the "Temporary Access Permits"). (Am. Compl. ¶ 4.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to remove the barriers on the Roadways. J. Allen Aff. ¶¶ 23-25, Ex. F. The Defendants also dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, accepted compensation and provided permits to the Town. *Id*.

5.      The four Temporary Access Permits are titled, on their face, "Lac du Flambeau Access Permit: Conditional Use / Revocable Permit." (Am. Compl. ¶ 4 n.1.)

**Response**: Undisputed.

6.      According to the Defendants' Resolution (No. 67(23)), by which Defendants approved the issuance of the Temporary Access Permits, the Temporary Access Permits are conditioned on satisfactory performance by the Town and other stipulations set out in Resolution No. 67(23). (Am. Compl. ¶ 4.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to allow the issuance of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-25, Ex. F.

7.      The term of the Temporary Access Permits is merely 30 days, expiring on April 12, 2023. (Am. Compl. ¶ 4.)

**Response**: Undisputed.

8.      Resolution 67(23) allows a maximum of two, 30-day renewals at Defendants' unilateral discretion. (Am. Compl. ¶ 4.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, have the discretion to issue renewals of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-25, Ex. F.

9.      If not renewed, the Temporary Access Permits will expire on April 12, 2023. Even if renewed twice, and assuming Defendants do not revoke them sooner and assuming there is no lapse in renewing, the Temporary Access Permits will expire on June 13, 2023, at which point Defendants will fully reconstruct the barricades on the Roadways again. (Am. Compl. ¶ 4.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, have the discretion to issue renewals or revocations of the Temporary Access Permits, or to vote to reconstruct the barriers. J. Allen Aff. ¶¶ 23-25, Ex. F.

10.      Moreover, the Roadways may be used only by the "homeowners on [the Roadways]," and Resolution No. 67(23) states that the Temporary Access Permits (purportedly) "grant each homeowner on [the Roadways] the ability to lawfully access their property for the duration of the Temporary Access Permit[s]." (Am. Compl. ¶ 4.)

**Response**: Undisputed.

11.      Defendants' foregoing actions ignore that, under federal law, the Roadways are public roads and their use can be restricted only as permitted by the Federal-Aid Highway Act and the Tribal Transportation Program. Defendants' past, ongoing, and imminent restrictions on use of the Roadways, including both the past and threatened future barricading of the Roadways, issuance of the Temporary Access Permits, and continued placement of the cement blocks, are unlawful

under the Federal-Aid Highway Act and the Tribal Transportation Program. (Am. Compl.¶ 4.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open.

12.     Resolution No. 67(23) and the Temporary Access Permits expressly declare that "[i]ssuance of [any Temporary Access Permits] does not imply any Tribal approval for treatment as [a] public road." (Am. Compl. ¶ 5.)

**Response**: Undisputed.

13.     By Defendants' own admission, Defendants have no intention of ceasing their unlawful actions. To the contrary, the Defendants' violation of federal law is ongoing and will continue unless court relief is granted to Plaintiffs. (Am. Compl. ¶ 5.)

**Response**: Disputed. Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶¶ 28-29.

14.     Whether Defendants' actions (barricading the Roadways, issuing permits for use of the Roadways, and threatening to soon fully re-barricade the Roadways) exceed federal Indian law tribal power and authority, and are therefore *ultra vires*, is a federal question. (Am. Compl. ¶ 6.)

**Response**: The Defendants object that this statement provides a legal conclusion or

argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open, so the Plaintiffs have failed to plead a federal question.

15.     Answering this question necessarily depends on resolution of a substantial question of federal law—interpretation of the Federal-Aid Highway Act—in the context of a federal "common law" issue, that is, the extent to which a tribe has authority to regulate non-tribe members, specifically, the extent to which a tribe that participates in the Tribal Transportation Program has authority to prohibit or restrict non-members from using roads listed by a tribe in the National Tribal Transportation Facilities Inventory. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 852–53 (1985); *Plains Commerce Bank v. Long Island Family Land & Cattle Co.*, 554 U.S. 316, 327–28 (2008); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983); *Tlopthlocco Tribal Town v. Stidham*, 762 F. 3d 1226, 1234 (10th Cir. 2014). (Am. Compl. ¶ 6.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The roads at issue are no longer listed on the National Tribal Transportation Facilities Inventory ("NTTFI"), J. Allen Aff. ¶ 33, Ex. I, so the Court does not have a question arising under federal laws regarding Indian reservation roads to resolve.

16.     Therefore, the Court has jurisdiction over this suit. (Am. Compl. ¶ 6.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11; J.

Allen Aff. ¶ 28, Ex. G. Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open, so the Plaintiffs have failed to plead a federal question granting this court subject-matter jurisdiction.

17.     Defendants' barricading the roads (or causing the roads to be barricaded) violates federal law and thus goes beyond the authority of the Tribe. Therefore, Defendants' actions are *ultra vires*. This suit seeks to enjoin Defendants' *ultra vires* actions that violate federal law and that go beyond the authority of the Tribe to undertake. Thus, Plaintiffs allege an ongoing violation of federal law and seek prospective relief. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). (Am. Compl. ¶ 7.)

**Response**: The Defendants object to this statement as requiring confirmation or information from an entity not a part of this lawsuit, and that it provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open, so the Plaintiffs have failed to plead a federal question granting this court subject-matter jurisdiction to determine whether Defendants' acted in any *ultra vires* manner.

18.     Defendants threatened to act, acted, continue to act, and will act in violation of federal law and in excess of federal common law limitations placed on the authority of the Tribe, by barricading public roads, which the Tribe lacks the authority to do, thereby inhibiting Plaintiffs from going to and from their homes and inhibiting Plaintiffs' freedom of movement, all to the injury of Plaintiffs. (Am. Compl. ¶ 8.)

**Response**: The Defendants object to this statement as requiring confirmation or

information from an entity not a part of this lawsuit, and that it provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open, so the Plaintiffs have failed to plead a federal question granting this court subject-matter jurisdiction. The Plaintiffs have likewise failed to plead with any specificity what the alleged "federal common law limitations" are, in contravention to the "well-pleaded complaint" rule.

19.     Plaintiffs seek a declaration that the roads at issue are public under federal law and must be kept open for public access such that Defendants shall neither barricade the roads nor limit or attempt to limit use of the roads including without limitation by permits, and Plaintiffs seek injunctive relief requiring Defendants (and those acting in participation or concert with Defendants) to take down these barricades and prohibiting Defendants (and those acting in participation or concert with Defendants) from reconstructing such barricades in the future, and requiring Defendants (and those acting in participation or concert with them) to cease and to take no further action in violation of the Federal-Aid Highway Act, including the Tribal Transportation Program. (Am. Compl. ¶ 8.)

**Response**: Undisputed that this statement is a summary of the relief sought in the Amended Complaint.

20.     This is the type of suit that is permissible under the doctrine of *Ex parte Young*. *See BNSF v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007) (citing *Verizon Md.*, 535 U.S. at 645–46). (Am. Compl. ¶ 8.)

**Response**: The Defendants object that this statement provides a legal conclusion or

argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs do not have valid rights-of-way easements over the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. Nothing in the Federal-Aid Highway Act requires roads without valid easements to remain open, so the Plaintiffs have failed to plead a federal question granting this court subject-matter jurisdiction to determine any *ultra vires* actions that may trigger the application of *Ex parte Young*.

21.     Venue is appropriate in the Western District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because the Plaintiffs and Defendants all have residences in Vilas County in the State of Wisconsin; and/or because all or a substantial part of the events giving rise to the claim occurred in Vilas County; and/or because all of the property that is the subject of the action is situated in Vilas County. (Am. Compl. ¶ 9.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, undisputed.

## The Parties

22.     The Plaintiffs each own property in Lac du Flambeau, Wisconsin. (Am. Compl. ¶¶ 10-33.)

**Response**: Undisputed.

23.     The Defendants each work or reside in Lac du Flambeau. (Compl. ¶¶ 34-45.)

**Response**: Undisputed.

24.     Plaintiffs Donald and Bonnie Pollard (the "Pollards") are adult individuals who own a residence at the address 4000 Annie Sunn Lane, Lac du Flambeau, WI 54538. (D. Pollard Decl. ¶¶ 1-3; Am. Compl. ¶ 10.)

**Response**: Undisputed.

25.     Plaintiffs James and Karen Baird (the "Bairds") are adult individuals who own a residence at the address 3963 Annie Sunn Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 11.)

**Response**: Undisputed.

26.     Plaintiff Big Crooked Lake Top LLC ("Big Crooked LLC") is a Wisconsin limited liability company, which owns a residence at the address 4006 Annie Sunn Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 12.)

**Response**: Undisputed.

27.     Plaintiff James William Milne ("Milne") is an adult individual who owns a residence at the address 3935 S. Annie Sunn Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 13.)

**Response**: Undisputed.

28.     Plaintiff Sandra P. Thompson ("Thompson") is an adult individual who owns a residence at the address 3984 Annie Sunn Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 14.)

**Response**: Undisputed.

29.     Plaintiffs Kevin and Barbara Christensen ("Christensens") are adult individuals who own a residence at the address 3675 Center Sugarbush Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 15.)

**Response**: Undisputed.

30.     Plaintiffs David and Teresa Kievet ("Kievets") are adult individuals and trustees of the David M. and Teresa R. Kievet Living Trust, dated May 27, 2020, and a residence at the address 3625 Center Sugarbush Lane, Lac du Flambeau, WI 54538 is trust property at which the Kievets' home is located. (Am. Compl. ¶ 16.)

**Response**: Undisputed.

31.     Plaintiff Sue Peterson ("Peterson") is an adult individual and co-trustee of the Mark J. Peterson and Susan M. Peterson Revocable Living Trust, dated March 22, 2001, and a residence at the address 3685 Center Sugarbush Lane, Lac du Flambeau, WI 54538 is trust property at which Peterson's home is located. (Am. Compl. ¶ 17.)

**Response**: Undisputed.

32.     Plaintiff Spanton Contracting LLC is a Wisconsin limited liability company, which owns a residence at the address 3681 Center Sugarbush Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 18.)

**Response**: Undisputed.

33.     Plaintiffs John and Julie Spanton are adult individuals whose home is located at the address 3681 Center Sugarbush Lane, Lac du Flambeau, WI 54538. (Spanton Decl. ¶¶ 1-3.)

**Response**: Undisputed.

34.     Plaintiffs Michael and Nancy Clark ("Clarks") are adult individuals who own a residence at the address 14900 Redpoll Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 19.)

**Response**: Undisputed.

35.     Plaintiffs Joseph and Sally Fermanich ("Fermanichs") are adult individuals who own a residence at the address 14900 Redpoll Lane, Lac du Flambeau, WI 54538. (S. Fermanich Decl. ¶ 2; Am. Compl. ¶ 20.)

**Response**: Undisputed.

36.     Plaintiffs Joseph and Martha Hunt ("Hunts") are adult individuals who own a residence at the address 14862 Redpoll Lane, Lac du Flambeau, WI 54538. (M. Hunt Decl. ¶¶ 1-3; Am. Compl. ¶ 21.)

**Response**: Undisputed.

37.    Plaintiffs Stanley Johnson and Jennifer Gridley Johnson ("Johnsons") are adult individuals who own a residence at the address 2411 East Ross Allen Lake Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 22.)

**Response**: Undisputed.

38.    Plaintiffs Anthony and Nancy Markovich ("Markoviches") are adult individuals who own a residence at the address 14857 Big Thunder Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 23.)

**Response**: Undisputed.

39.    Plaintiffs David P. Miess ("Miess") and Sandra J. Schlosser ("Schlosser") are adult individuals who own a residence at the address 14880 Redpoll Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 24.)

**Response**: Undisputed.

40.    Plaintiffs Michael Hornbostel ("Hornbostel") and Marsha Panfil ("Panfil") are adult individuals who own a residence at the address 14866 Redpoll Lane, Lac du Flambeau, WI 54538. (M. Hornbostel Decl. ¶¶ 1-3; Am. Compl. ¶ 25.)

**Response**: Undisputed.

41.    Plaintiffs Dennis and Rachel Pearson ("Pearsons") are adult individuals who own a residence at the address 2540 East Ross Allen Lake Lane, Lac du Flambeau, WI 54538. (R. Pearson Decl. ¶¶ 1-3; Am. Compl. ¶ 26.)

**Response**: Undisputed.

42.    Plaintiffs Michael and Victoria Thomas (the "Thomases") are adult individuals who own a lot on East Ross Allen Lake Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 27.)

**Response**: Undisputed.

43. Plaintiffs Robert and Nicole Beer ("Beers") are adult individuals who own a residence at the address 12583 Elsie Lake Lane, Lac du Flambeau, WI 54538. (Am. Compl. ¶ 28.)

**Response**: Undisputed.

44. Plaintiffs John Disch ("Disch") and Mary Possin ("Possin") are adult individuals who own a residence at the address 12593 Elsie Lake Lane, Lac du Flambeau, WI 54538. (M. Possin Decl. ¶¶ 1-2; Am. Compl. ¶ 29.)

**Response**: Undisputed.

45. Plaintiffs Gary and Christine Huck ("Hucks") are adult individuals and trustees of the Gary J. Huck Trust, and a residence at the address 12615 Elsie Lake Lane, Lac du Flambeau, WI 54538 is trust property at which the Hucks' home is located. (Am. Compl. ¶ 30.)

**Response**: Undisputed.

46. Plaintiff Julie M. Kilger ("Kilger") is an adult individual who owns a residence at the address 12605 Elsie Lake Lane, Lac du Flambeau, WI 54538. (J. Kilger Decl. ¶¶ 1-2; Am. Compl. ¶ 31.)

**Response**: Undisputed.

47. Plaintiffs Steven, Sharon and Ryan Lefeber ("Lefebers") are adult individuals and trustees of the Steven P. Lefeber Trust, and a residence at the address 12662 Elsie Lake Lane, Lac du Flambeau, WI 54538 is trust property at which the Lefebers' home is located. (Am. Compl. ¶ 32.)

**Response**: Undisputed.

48. Plaintiffs Thomas and Julie Walsh (the "Walshes") are adult individuals who own a residence at the address of 12601 Elsie Lake Lane, Lac du Flambeau, WI 54538. (J. Walsh Decl. ¶ 2; Am. Compl. ¶ 33.)

**Response**: Undisputed.

49.     Defendant John Johnson, Sr. is the President of the Lac du Flambeau Band of Lake Superior Chippewa Indians, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 34; ECF No. 12, B. Hubing Decl. ¶¶ 3, 5.)

**Response**: Undisputed.

50.     Defendant George Thompson is the Vice President of the Lac du Flambeau Band of Lake Superior Chippewa Indians, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 35; B. Hubing Decl. ¶¶ 3, 5.)

**Response**: Undisputed.

51.     Defendant William J. Stone is the Treasurer of the Lac du Flambeau Band of Lake Superior Chippewa Indians, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 36; B. Hubing Decl. ¶¶ 3, 5.)

**Response**: Undisputed.

52.     Defendant Jamie Ann Marie Allen is the Secretary of the Lac du Flambeau Band of Lake Superior Chippewa Indians, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 37; B. Hubing Decl. ¶¶ 3, 5.)

**Response**: Undisputed.

53.     Defendant Raymond Allen is a Member of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 38; B. Hubing Decl. ¶¶ 4-5.)

**Response**: Undisputed.

54.     Defendant Jeffery Bauman, Sr. is a Member of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac

du Flambeau, WI 54538. (Am. Compl. ¶ 39; B. Hubing Decl. ¶¶ 4-5.)

   **Response**: Undisputed.

   55.     Defendant Eric Chapman, Sr. is a Member of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 40; B. Hubing Decl. ¶¶ 4-5.)

   **Response**: Undisputed.

   56.     Defendant Lyle Thomas Chapman is a Member of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 41; B. Hubing Decl. ¶¶ 4-5.)

   **Response**: Undisputed.

   57.     Defendant Paula Poupart is a Member of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 42; B. Hubing Decl. ¶¶ 4-5.)

   **Response**: Undisputed.

   58.     Defendant Louis St. Germaine is a Member of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 43; B. Hubing Decl. ¶¶ 4-5.)

   **Response**: Undisputed.

   59.     Defendant Joseph Wildcat, Sr. is a Member of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 44; B. Hubing Decl. ¶¶ 4-5.)

   **Response**: Undisputed.

   60.     Defendant Patricia Zimmerman is a Member of the Lac du Flambeau Band of Lake

Superior Chippewa Indians Tribal Council, whose office is located at 418 Little Pines Road in Lac du Flambeau, WI 54538. (Am. Compl. ¶ 45; B. Hubing Decl. ¶¶ 4-5.)

**Response**: Undisputed.

61.     Defendant Johnson was personally present during the January 31, 2023 construction or placement of the barricades. (Am. Compl. ¶ 34.)

**Response**: Disputed in part. The Defendants dispute that the named Defendant was present at the placement of the barriers on Annie Sunn Lane, Center Sugarbush Lane, or East Ross Allen Lake Lane.

62.     Defendant Johnson supervised the January 31, 2023 construction or placement of the barricades. (Am. Compl. ¶ 34.)

**Response**: Disputed. Defendant Johnson was not present in any supervisory role. G. Thompson Aff. ¶ 22.

63.     Defendant Thompson assisted in physically placing the barricades on January 31, 2023. (Am. Compl. ¶ 35.)

**Response**: Undisputed.

64.     Defendant Chapman assisted in physically placing the barricades on January 31, 2023. (Am. Compl. ¶ 41.)

**Response**: Undisputed.

**Plaintiff's Access to and From Their Homes and Properties Was Blocked, and Plaintiffs'**
**Access to and From Their Homes and Properties Will Very Likely Again Be Blocked Soon**

65.     The only roadway access to the Pollards' property is via Annie Sunn Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road.. (D. Pollard Decl. ¶ 6; Am. Compl. ¶ 46.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that

16

asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

66.     The only roadway access to the Bairds' property is via Annie Sunn Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 6; Am. Compl. ¶ 47.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

67.     The only roadway access to Big Crooked LLC's property is via Annie Sunn Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing ¶ 6; Am. Compl. ¶ 48.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

68.     The only roadway access to Mr. Milne's property is via Annie Sunn Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 6; Am. Compl. ¶ 49.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

69.     The only roadway access to Ms. Thompson's property is via Annie Sunn Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 6; Am. Compl. ¶ 50.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

70.     The only roadway access to the Christensens' property is via Center Sugarbush Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 7; Am. Compl. ¶ 51.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to

place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

71.    The only roadway access to the Kievets' property is via Center Sugarbush Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 7; Am. Compl. ¶ 52.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

72.    The only roadway access to Ms. Peterson's property is via Center Sugarbush Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 7; Am. Compl. ¶ 53.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

73.    The only roadway access to the Spanton Contracting LLC's property, which is

where the Spantons' home is located, is via Center Sugarbush Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (J. Spanton Decl. ¶ 4; Am. Compl. ¶ 54.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

74.     The only roadway access to the Clarks' property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 8; Am. Compl. ¶ 55.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

75.     The only roadway access to the Fermanichs' property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (S. Fermanich Decl. ¶¶ 3-5; B. Hubing Decl. ¶ 8; Am. Compl. ¶ 56.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to

place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

76.     The only roadway access to the Hunts' property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (M. Hunt Decl. ¶¶ 7-9; B. Hubing Decl. ¶ 8; Am. Compl. ¶ 57.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

77.     The only roadway access to the Johnsons' property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 8; Am. Compl. ¶ 58.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29..

78.     The only roadway access to the Markoviches' property is via East Ross Allen Lake

Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 8; Am. Compl. ¶ 59.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

79.     The only roadway access to the Mr. Miess' and Ms. Schlosser's property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 8; Am. Compl. ¶ 60.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

80.     The only roadway access to Mr. Hornbostel's and Ms. Panfil's property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (M. Hornbostel Decl. ¶¶ 4-6; B. Hubing Decl. ¶ 8; Am. Compl. ¶ 61.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex.

H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

81.     The only roadway access to the Pearsons' property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (R. Pearson Decl. ¶ 4; Am. Compl. ¶ 62.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

82.     The only roadway access to the Thomases' property is via East Ross Allen Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (Am. Compl. ¶ 63.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

83.     The only roadway access to the Beers' property is via Elsie Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing

Decl. ¶ 9; Am. Compl. ¶ 64.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

84.     The only roadway access to the Mr. Disch's and Ms. Possin's property is via Elsie Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (M. Possin Decl. ¶¶ 3-5; B. Hubing Decl. ¶ 9; Am. Compl. ¶ 65.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

85.     The only roadway access to Ms. Kilger's property is via Elsie Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (J. Kilger Decl. ¶ 3; Am. Compl. ¶ 66.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is

currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

86.     The only roadway access to the Hucks' property is via Elsie Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (B. Hubing Decl. ¶ 9; Am. Compl. ¶ 67.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

87.     The only roadway access to the Walshes' property is via Elsie Lake Lane, which access was blocked because of the barricade Defendants unlawfully placed on the road. (J. Walsh Decl. ¶¶ 3-5; Am. Compl. ¶ 68.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

88.     The Town is located within the exterior boundaries of the Lac du Flambeau Reservation. The Reservation has within its borders multiple pockets of non-Tribal land owned in fee simple by non-Tribal members, as well as having large areas of Tribal trust land and other land

owned by Tribal members, resulting in almost a checkerboard pattern in some areas. (*See* B. Hubing Decl. ¶ 27.)

    **Response**: Undisputed.

    89.    Annie Sunn Lane, Center Sugarbush Lane, East Ross Allen Lake Lane, and Elsie Lake Lane (individually, "Roadway," and, collectively, the "Roadways") cross over Indian land and non-Indian land within the exterior boundaries of the Lac du Flambeau Reservation. (B. Hubing Decl. ¶ 11; Am. Compl. ¶ 71.)

    **Response**: Undisputed.

    90.    Each Roadway, including the portions that cross Indian land and the portions that cross non-Indian land, is a "public road," as defined in 23 U.S.C. § 101(a)(23). (Am. Compl. ¶ 72.)

    **Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Roadways are also not public roads as defined in 23 U.S.C. § 101(a)(23) because they are not listed in the National Tribal Transportation Facilities Inventory nor enrolled in the Tribal Transport Program. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

    91.    A survey completed in 2019 by Steigerwaldt Land Surveying, LLC ("Steigerwaldt") shows and describes the 1916.1 feet (approximately .36 miles) of Annie Sunn Lane that was originally at issue. In addition to the portion of Annie Sunn Lane shown on the survey, the Defendants also barricaded that portion of Annie Sunn Lane (approximately .5 miles) running in a northerly and southerly direction between Little Trout Road and the east-west segment

shown of the survey. (B. Hubing Decl. ¶ 12, Ex. A; Am. Compl. ¶ 73.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29.

92.     A survey completed in 2018 by Steigerwaldt shows and describes the 745.4 feet (approximately .14 miles) of Center Sugarbush Lane at issue. (B. Hubing Decl. ¶ 13, Ex. B; Am. Compl. ¶ 74.)

**Response**: Undisputed.

93.     A survey completed in 2018 by Steigerwaldt shows and describes the 159.5 feet (approximately .03 miles) of East Ross Allen Lake Lane at issue. (B. Hubing Decl. ¶ 14, Ex. C; Am. Compl. ¶ 75.)

**Response**: Undisputed.

94.     A survey completed in 2019 by Steigerwaldt shows and describes the 450.2 feet (approximately .085 miles) segment and the 781.2 feet (approximately .15 miles) segment of Elsie Lake Lane at issue. (B. Hubing Decl. ¶ 15, Ex. D; Am. Compl. ¶ 76.)

**Response**: Undisputed.

95.     The federal Tribal Transportation Program (the "TTP"), formerly known as the Indian Reservation Roads Program ("IRR"), was established to help provide safe and adequate transportation and public road access to and within Indian reservations and lands. (Am. Compl. ¶ 77.)

**<u>Response</u>**: Disputed in part. The Defendants dispute this statement to the extent that it purports to explain all of the establishing purposes of the TTP or IRR, which can instead be found in the Congressional statement of purpose section at 23 U.S.C. § 201(a).

96.     The Tribe voluntarily elects to participate in the federal TTP. (Am. Compl. ¶ 78.)

**<u>Response</u>**: The Defendants object to this statement as requiring confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

97.     The Tribe has identified roads that are part of its "Tribal Transportation System." Such roads are listed in an inventory of tribal transportation facilities maintained by the Secretary of the Interior in cooperation with the Secretary of the Federal Highway Administration.  23 U.S.C. § 202(b)(1)(A).  The inventory is referred to as the National Tribal Transportation Facilities Inventory, or NTTFI. (Am. Compl. ¶ 79.)

**<u>Response</u>**: Undisputed.

98.     The roads listed in the NTTFI are "public roads," i.e., roads that are under the jurisdiction of and maintained by a "public authority" (a federal, state, county, town or township, Indian Tribe, municipal or instrumentality with authority to maintain the road) (23 U.S.C. §101(a)(22), (23), and (33); 25 C.F.R. §§ 170.5 & 170.114(a)) and that are open for public travel (23 U.S.C. § 101(a)(22), (23), and (33); 25 C.F.R. §§ 170.5 & 170.114(a)). (Am. Compl. ¶ 80.)

**<u>Response</u>**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants' dispute the portion of this statement that does not account for other facts and laws that impact the applicability of the laws and regulations cited in the statement, including that the Plaintiffs do not have valid rights-of-way easements over the Roadways, J. Peterson Aff. ¶ 11; J.

Allen Aff. ¶ 28, Ex. G, and that there are federal regulations that speak directly to the issues of expired rights-of-way easements over lands owned by the United States for the benefit of Indian tribes, 25 C.F.R. §§ 169.410, 169.413.

99.     All roads listed in the NTTFI must be open and available for public use as required by 23 U.S.C. § 101(a)(22), (23), and (33); 25 C.F.R. §§ 170.5 & 170.114(a). (Am. Compl. ¶ 81.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants' dispute the portion of this statement that does not account for other facts and laws that impact the applicability of the laws and regulations cited in the statement, including that the Plaintiffs do not have valid rights-of-way easements over the Roadways, J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G, and that there are federal regulations that speak directly to the issues of expired rights-of-way easements over lands owned by the United States for the benefit of Indian tribes, 25 C.F.R. §§ 169.410, 169.413.

100.    The Tribe elects to list each Roadway in the NTTFI, as a result of the Tribe listing the Roadways in its IRR Inventory, as described in the two paragraphs immediately below. (Am. Compl. ¶ 82.).

**Response**: The Defendants object that this statement is unintelligible as written and the Defendants cannot formulate a response. To the extent a response is required, disputed.

101.    The Tribe's recent IRR Official Indian Reservation Road Inventory (the "IRR Inventory"), dated January 24, 2023 (one week before the Defendants closed the Roadways), lists the roads and mileage most recently reported by the Tribe. (B. Hubing Decl. ¶ 23, Ex. L; Am. Compl. ¶ 83.)

**Response**: The Defendants object to this statement as requiring in part confirmation or

information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place a barrier on the referenced road. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. *Id.* at ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute the portion of this statement that asserts that the January 24, 2023 IRR Inventory is the most up-to-date inventory. *See* U.S. Dep't of the Interior, Bureau of Indian Affairs, Apr. 6, 2023, (last accessed Apr. 10, 2023), https://itims.bia.gov/invreports/Midwest.pdf, at 126–28. The Defendants finally dispute that the Tribe takes any affirmative action to regularly review and report the roads and mileage to the NTTFI. G. Thompson Aff. ¶ 15.

102.   The Tribe's IRR Inventory lists:

- 0.5 miles of Annie Sunn Lane, which includes a substantial portion of the .86 miles at issue on Indian land that was barricaded;

- 0.8 miles of Center Sugarbush Lane, which includes the 745.4 feet (approximately .14 miles) at issue on Indian land that was barricaded;

- 0.6 miles of East Ross Allen Lake Lane, which includes the 159.5 feet (approximately .03 miles) at issue on Indian land that was barricaded; and

- 0.8 miles of Elsie Lake Lane, which includes the 781.2 feet (approximately .15 miles) at issue on Indian land that was barricaded.

(B. Hubing Decl. ¶ 23, Ex. L; Am. Compl. ¶ 84.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed.

The Roadways are not listed on the IRR Inventory, and are not a part of the NTTFI or TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

103.    Only the Secretary of the Interior or the public authority having jurisdiction over a road listed in the NTTFI may restrict road use or close roads temporarily. They may do so only in very limited circumstances and must "consult[]with [the] Tribe and applicable private landowners" in doing so, unless there is a concern about "immediate safety or life-threatening situation[]." 25 C.F.R. §§ 170.114(a)-(b). (Am. Compl. ¶ 85.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The cited Federal Regulation is not the only law or regulation applicable to whether a road listed in the NTTFI may be restricted or closed. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D; 25 C.F.R. §§ 169.410, 169.413.

104.    On the NTTFI, the Tribe identifies the "owner" – i.e., "the public authority responsible for operating or maintaining a particular road," as the Town or Vilas County for each of the Roadways. 52 IAM 9-H, § 2.2(2). (Am. Compl. ¶ 86.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed. The Roadways are not listed on the IRR Inventory, and are not a part of the NTTFI or TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

105.    Center Sugarbush Lane, East Ross Allen Lake Lane, Elsie Lake Lane and at least half a mile of Annie Sunn Lane have been open to the public for many decades. (*See* D. Pollard Decl. ¶ 17; J. Spanton Decl. ¶ 17; R. Pearson Decl. ¶ 25; J. Kilger Decl. ¶ 18; M. Hunt Decl. ¶ 36; J. Walsh Decl. ¶ 12; S. Fermanich Decl. ¶ 25.)

**Response**: Undisputed.

106.     The Town maintains Center Sugarbush Lane, East Ross Allen Lake Lane, Elsie Lake Lane, and the north-south portion of Annie Sunn Lane. Individual landowners who use Annie Sunn Lane maintain the east-west portion of that road. (*See* D. Pollard Decl. ¶ 17; J. Spanton Decl. ¶ 17; R. Pearson Decl. ¶ 25; J. Kilger Decl. ¶ 18; Am. Compl. ¶ 87.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed. The Tribe has been maintaining Center Sugarbush Lane, East Ross Allen Lake Lane, Elsie Lake Lane, and the north-south portion of Annie Sunn Lane since January 31, 2023. G. Thompson Aff. ¶¶ 25-27.

107.     Over the years, the Tribe has signed various agreements with the Town, such as the Acknowledgement of Public Authority Responsibility (APAR) in 2007, whereby the Tribe agreed that the Roadways "will continue to be owned by the Town and opened to the public for travel." (B. Hubing Decl. ¶ 24, Ex. M; Am. Compl. ¶ 88.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute the portion of the statement that does not acknowledge that the referenced APAR was rescinded in November 2017 via the Tribe's Tribal Council Resolution No. 390(17). J. Allen Aff. ¶¶ 7-9, Ex. A.

108.     The Bureau of Indian Affairs ("BIA") has opined that, because the Roadways are listed on the approved NTTFI (formerly IRR), the Roadways "must be open to the public." (B. Hubing Decl. ¶ 25, Ex. N; Am. Compl. ¶ 89.)

**Response**: The Defendants object to this statement as requiring in part confirmation or

information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants do not dispute that the quoted language appears in a letter sent from the Acting Midwest Regional Director of the Bureau of Indian Affairs to Francis Chartier, the Town Chairman of Lac du Flambeau in March 2011. The Defendants dispute the remainder of the statement to the extent that it purports to be an official policy statement still in effect, or that it is a complete statement of the legal issues applicable to when a road listed on the NTTFI may be closed. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D.; J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

109.    The Tribe receives federal funding for listing the Roadways on the NTTFI. (Am. Compl. ¶ 90.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed. The Tribe has not spent any funding from the TTP program for the Roadways. J. Allen Aff. ¶ 28, Ex. G; G. Thompson Aff. ¶¶ 17-18. Further, the Roadways are not listed on the IRR Inventory, and are not a part of the NTTFI or TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

110.    On January 31, 2023, Defendants or those acting in concert with them placed or caused to be placed barricades on all of the Roadways, consisting of large concrete blocks with locked chains connecting the blocks as well as wooden barricades in front of the chains, thereby preventing the vast majority of Plaintiffs from freely going to or from their respective homes or properties. (D. Pollard Decl. ¶¶ 1-11; R. Pearson Decl. ¶¶ 1-10; J. Kilger Decl. ¶¶ 1-9; J. Spanton Decl. ¶¶ 1-11; S. Fermanich Decl. ¶¶ 1-19; M. Hunt Decl. ¶¶ 1-15; M. Hornbostel Decl. ¶¶ 1-12; M. Possin Decl. ¶¶ 1-7; J. Walsh Decl. ¶¶ 1-7; J. Hunt Decl. ¶¶ 1-16; B. Hubing Decl. ¶¶ 16-19,

Exs. E-H; B. Hubing Suppl. Decl. ¶¶ 4-5, Exs. B & C.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that Plaintiffs were prevented from "freely going to or from" their homes because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

111.    Defendants have since partially deconstructed the barricades by removing the chains that connect the pair of cement blocks on each Roadway as of March 13, 2023, but this status is only temporary, and Defendants have threatened to place the barricades back on the Roadways. (Am. Compl. ¶ 95; M. Hornbostel Decl. ¶¶ 8-9; M. Hunt Decl. ¶¶ 11-12; M. Possin Decl. ¶¶ 14-15; S. Fermanich Decl. ¶¶ 23-24; J. Walsh Decl. ¶¶ 10-11; J. Hunt Decl. ¶¶ 10-11.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to remove, or cause to be removed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, have the discretion to issue renewals or revocations of the Temporary Access Permits, or to vote to reconstruct the barriers. J. Allen Aff. ¶¶ 23-26, Ex. F.

112.    The barricades on each of the Roadways consisted of two large concrete or cement blocks with a locked chain connecting the blocks as well as a wooden barricade in front of the chain. Keys were required to open the lock on the chain connecting the concrete or cement blocks.

Defendants gave only a select few tribal members access to the keys and permission to open the locked chain lock. Due to the revocable temporary access permits issued to the Town, the chains connecting the concrete or cement blocks have been temporarily removed as of March 13, 2023, but the concrete or cement blocks on the Roadways currently remain in place. (Am. Compl. ¶ 96; B. Hubing Suppl. Decl. ¶ 3, Ex. A; M. Hornbostel Decl. ¶¶ 8-9; M. Hunt Decl. ¶¶ 11-12; M. Possin Decl. ¶¶ 14-15; S. Fermanich Decl. ¶¶ 23-24; J. Walsh Decl. ¶¶ 10-11; J. Hunt Decl. ¶¶ 10-11.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to give, or cause to be given, keys to the locks on the described chains. J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute that this statement does not account for the extensive efforts taken by the Tribe, through its Tribal Council, to ensure emergency services would not be interrupted because of the barriers. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

113.   The Town obtained on March 13, 2023, a "Lac du Flambeau Access Permit: Conditional Use/Revocable Permit" for each of the four Roadways (the "Revocable Temporary Access Permits") upon payment of $5,000 per road and other certain terms and conditions, with each potential renewal (maximum of two renewals) costing an additional $5,000, for a total of $60,000 to reopen each Roadway for a period of potentially up to 90 days total. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute the total amount of $60,000 listed is for "each Roadway" and instead, is the total amount for the combined Roadways. J. Allen Aff. ¶¶ 23-26, Ex. F.

114.     The Revocable Temporary Access Permits are an agreement or agreements between the Town and the Tribe. The Plaintiffs are not parties to the agreement or agreements relating to the permits. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

115.     The Revocable Temporary Access Permits were issued to the Town, not to Plaintiffs. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

116.     The Revocable Temporary Access Permits are revocable. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 3-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

117.     The Revocable Temporary Access Permits are temporary. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

118.     The stated purpose of the Revocable Temporary Access Permits is for "Temporary Access Permit to traverse Tribal Land." (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 3-6.)

**Response**: Undisputed.

119.    The Revocable Temporary Access Permits deny that the Roadways are public roads. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

120.    The Revocable Temporary Access Permits each state: "Issuance of permit does not imply any Tribal approval for treatment as public road." (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 3-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

121.    Resolution No. 67(23), which approved the Revocable Temporary Access Permits, states in part: "The issuance of any Temporary Access Permits does not imply any Tribal approval for treatment as a public road for the applicable road." (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 2.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

122.    Provided that the Defendants do not revoke or terminate the Revocable Temporary Access Permits sooner, the term of each Revocable Temporary Access Permit is 30 days, so each expires on April 12, 2023. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required,

disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, have the discretion to issue revocations or renewals of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F.

123.    Per Resolution No. 67(23), the Revocable Temporary Access Permits can be renewed but only for a maximum of two additional 30-day terms. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 2.)

**<u>Response</u>**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, have the discretion to issue revocations or renewals of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F.

124.    If the Defendants renew the Revocable Temporary Access Permits twice, and if there is no lapse between any renewal, and if the Defendants do not revoke the permits or renege on the agreement with the Town, the Defendants will fully reconstruct the barricades on or immediately after June 13, 2023. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**<u>Response</u>**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, have the discretion to issue revocations or renewals of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F.

125.    Due to the Revocable Temporary Access Permits, on March 13, 2023, the chains connecting the concrete or cement blocks on each Roadway were unlocked and removed, but the concrete or cement blocks currently remain in place on the Roadways. (M. Hornbostel Decl. ¶¶ 8-

9; M. Hunt Decl. ¶¶ 11-12; M. Possin Decl. ¶¶ 14-15; S. Fermanich Decl. ¶¶ 23-24; J. Walsh Decl. ¶¶ 10-11; J. Hunt Decl. ¶¶ 10-11.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

126.    The Revocable Temporary Access Permits state that certain terms and conditions must be met by the Town in order to renew the Revocable Temporary Access Permits, including payment of additional fees, and threaten closure if the Town fails to properly renew the permits. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: Undisputed.

127.    The Revocable Temporary Access Permits each state: "***Failure to renew the temporary access permit will result in immediate denial of access***." (Emphasis in original). (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 3-6.)

**Response**: Undisputed.

128.    The Revocable Temporary Access Permits are conditional and restrict Plaintiffs' and the public's use of and access to the Roadways. (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-6.)

**Response**: Disputed in part. The Defendants dispute that the Temporary Access Permits restrict the Plaintiffs' use of and access to the Roadways. J. Allen Aff. ¶¶ 23-26, Ex. F.

129.    Resolution No. 67(23) states that upon the payment of the permit fee and issuance of the permits, the "temporary removal of the chain[s] blocking access to the road[s]" will be approved, "but not the existing cement barricades." (B. Hubing Suppl. Decl. ¶ 3, Ex. A at 2.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required,

undisputed.

130.   Upon the revocation or expiration of the revocable temporary access permits, the Defendants will relock, or will cause the locking of, the chains connecting the concrete or cement blocks on the Roadways. (Am. Compl. ¶ 97; *see* B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1- 6.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, have the discretion to issue revocations or renewals of the Temporary Access Permits, or act following any final expiration of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F.

131.   Removal of the chains connecting the blocks on the Roadways does not ensure entrance for emergency responders because the permits only grant homeowners access to use the road. (B. Hubing Suppl. Decl. ¶ 3, Ex. A.)

**<u>Response</u>**: Disputed. The Roadways have always remained open and available for emergency responders. T. Bill Aff. ¶¶ 13-17.

132.   When the barricades were fully constructed on the Roadways, mail delivery was interrupted, delayed, or disrupted. (M. Hunt Decl. ¶ 24; J. Hunt Decl. ¶ 23.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that attempts to suggest that there were any serious disruptions to the mail delivery on the Roadways, because it was still completed several days each week. T. Bill Aff. ¶¶ 18, 24.

133.   Due to the barricades and Defendants' communications to the U.S. Postal Service, Plaintiffs were only able to receive mail two-to-three times per week. (M. Possin Decl. ¶ 12.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, had any, or directed any employees to have, communications with the U.S. Postal Service. T. Bill Aff.

¶¶ 18, 24.

134.    For a span of three weeks, when the barricades were fully constructed, the mail delivery was completely stopped. (M. Hunt Decl. ¶ 24; J. Hunt Decl. ¶ 23.)

**Response**: Disputed. There was not a "span of three weeks" where "mail delivery was completely stopped." The Plaintiffs' own cited affidavits do not support this statement, alleging only 21 separate days where there was no mail service, not three continuous weeks. At no point while the roads contained barriers was mail delivery stopped for three weeks, and mail was only delivered when there was actually mail to be delivered. T. Bill Aff. ¶¶ 18, 24.

135.    The Roadways are the sole means of Plaintiffs' vehicular access to their respective properties. (ECF No. 12, B. Hubing Decl. ¶¶ 6-9; M. Hornbostel Decl. ¶¶ 1-6; M. Hunt Decl. ¶¶ 1-9; M. Possin Decl. ¶¶ 1-7; S. Fermanich Decl. ¶¶ 1-5; J. Walsh Decl. ¶¶ 1-7; J. Hunt Decl. ¶¶ 1-8.)

**Response**: Disputed in part. The Defendants dispute this statement to the extent that it includes vehicles intended for water and air travel in its statement of "vehicular access."

136.    When the barricades are fully constructed on the Roadways, Plaintiffs and others similarly situated are prevented or restricted from freely entering and exiting their residential neighborhoods or respective properties. (D. Pollard Decl. ¶¶ 1-11; R. Pearson Decl. ¶¶ 1-10; J. Kilger Decl. ¶¶ 1-9; P. Kester Decl. ¶¶ 1-8; J. Spanton Decl. ¶¶ 1-11; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-21; M. Possin Decl. ¶¶ 1-7; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-7; J. Hunt Decl. ¶¶ 1-29.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that Plaintiffs were or are prevented from "freely entering and existing" their homes because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

137.    When the barricades are fully constructed on the Roadways, Plaintiffs are prevented or restricted from any reasonable entrance to and exit from their homes or respective properties. (D. Pollard Decl. ¶¶ 1-11; R. Pearson Decl. ¶¶ 1-10; J. Kilger Decl. ¶¶ 1-9; P. Kester Decl. ¶¶ 1-8; J. Spanton Decl. ¶¶ 1-11; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-21; M. Possin Decl. ¶¶ 1-7; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-7; J. Hunt Decl. ¶¶ 1-29.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the portion of this statement that asserts that Plaintiffs were or are prevented from "any reasonable entrance to and exist from" their homes because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

138.    The only means of access to properties owned by Plaintiffs, as well as other unnamed residents, within the unallotted part of the reservation are the Roadways. (D. Pollard Decl. ¶¶ 6-7; R. Pearson Decl. ¶¶ 4-5; J. Kilger Decl. ¶¶ 3-4; J. Spanton Decl. ¶¶ 4-5; B. Hubing Decl. ¶¶ 6-9; S. Fermanich Decl. ¶¶ 3-5; M. Hunt Decl. ¶¶ 7-9; M. Hornbostel Decl. ¶¶ 4-6; M. Possin Decl. ¶¶ 3-5; J. Walsh Decl. ¶¶ 3-5.)

**<u>Response</u>**: Disputed in part. The Defendants dispute the statement to the extent that it does not account for access to properties via waterways or airspace. G. Thompson Aff. ¶ 11.

139.    The land comprising the Lac du Flambeau Indian Reservation, including Plaintiffs' properties and the parcels improved by the Roadways, was reserved to the Tribe by the Treaty of 1854, 10 Stats., 1109. (Am. Compl. ¶ 202.)

**<u>Response</u>**: Undisputed.

140.    Parcels of land on the Lac du Flambeau Reservation were appropriated to individual tribal members pursuant to the Treaty of 1854 and/or other federal law from whose successors Plaintiffs acquired title. (Am. Compl. ¶ 203.)

**Response**: Undisputed.

141.     The only means of access to Plaintiffs' properties since severance of the parcels, has been by use of the roads within the unallotted part of the reservation, namely, the Roadways. (B. Hubing Decl. ¶¶ 6-9; Am. Compl. ¶ 204.)

**Response**: Disputed in part. The Defendants dispute the statement to the extent that it does not account for access to properties via waterways or airspace. G. Thompson Aff. ¶ 11.

142.     Without access to and use of the Roadways, Plaintiffs' properties are landlocked. (Am. Compl. ¶ 205; D. Pollard Decl. ¶¶ 6-7; R. Pearson Decl. ¶¶ 4-5; J. Kilger Decl. ¶¶ 3-4; J. Spanton Decl. ¶¶ 4-5; S. Fermanich Decl. ¶¶ 3-5, 19; M. Possin Decl. ¶¶ 3-7; M. Hunt Decl. ¶¶ 7-9, 13; M. Hornbostel Decl. ¶¶ 4-6, 10-11; J. Walsh Decl. ¶¶ 3-7.)

**Response**: Undisputed.

143.     When the barricades are fully constructed on the Roadways, Plaintiffs' properties are landlocked. (D. Pollard Decl. ¶¶ 6-7; R. Pearson Decl. ¶¶ 4-5; J. Kilger Decl. ¶¶ 3-4; J. Spanton Decl. ¶¶ 4-5; S. Fermanich Decl. ¶¶ 3-5, 19; M. Possin Decl. ¶¶ 3-7; M. Hunt Decl. ¶¶ 7-9, 13; M. Hornbostel Decl. ¶¶ 4-6, 10-11; J. Walsh Decl. ¶¶ 3-7.)

**Response**: Undisputed.

144.     Closure of the Roadways by way of the barricades denies Plaintiffs unrestricted access to and from their homes such that, when the barricades are fully constructed on the Roadways, Plaintiffs are wholly prevented from returning to their homes or are prevented from freely or reasonably entering and exiting their properties. (D. Pollard Decl. ¶¶ 1-11; R. Pearson Decl. ¶¶ 1-10; J. Kilger Decl. ¶¶ 1-9; P. Kester Decl. ¶¶ 1-8; J. Spanton Decl. ¶¶ 1-11; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-21; M. Possin Decl. ¶¶ 1-7; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-7; J. Hunt Decl. ¶¶ 1-29.)

**Response**: Disputed in part. The Defendants dispute the statement to the extent that it does not account for access to properties via waterways or airspace. G. Thompson Aff. ¶ 11.

145.   The barricades completely closing or restricting use of the Roadways, the Defendants' threats of re-barricading, and the actual imminent re-barricading of the Roadways jeopardize the health, welfare and safety of the Plaintiffs and other residents whose homes can only be reasonably accessed, including on foot, via the Roadways. (D. Pollard Decl. ¶¶ 6-16; R. Pearson Decl. ¶¶ 4-24; J. Kilger Decl. ¶¶ 3-17; J. Spanton Decl. ¶¶ 4-16; P. Kester Decl. ¶¶ 4-30; S. Fermanich Decl. ¶¶ 3-5, 11-24; M. Hunt Decl. ¶¶ 7-17, 30, 32-35; M. Hornbostel Decl. ¶¶ 4-12; M. Possin Decl. ¶¶ 3-15; J. Walsh Decl. ¶¶ 3-11.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts the barriers "jeopardize the health, welfare and safety of the Plaintiffs" because it fails to acknowledge the extensive efforts conducted for the benefit of the Plaintiffs' health, safety, and welfare, by the Tribe through its Tribal Council. To date, this has included regular deliveries, arranged by the Tribe, of mail, medications, food, pet food, and gas to the Plaintiffs, as well as road maintenance, property checks, arrangements for necessary home improvements, including roof repair, tree service, and new appliances, and garbage pickup. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27. The Defendants also dispute the statement to the extent that it does not account for access to properties via waterways or airspace. G. Thompson Aff. ¶ 11.

146.   When the barricades are fully constructed, first responders, such as firefighters, non-tribal law enforcement officers, paramedics, and emergency medical technicians, need to find a way to open the locks on the barricades, which lengthens the wait time for Plaintiffs to receive emergency services. (D. Pollard Decl. ¶ 15; R. Pearson Decl. ¶ 21; J. Kilger Decl. ¶ 10; J. Spanton Decl. ¶ 15; S. Fermanich Decl. ¶ 20; M. Possin Decl. ¶ 13.)

**<u>Response</u>**: Disputed. The Defendants dispute that the wait time for the Plaintiffs to receive emergency services would be lengthened, given the direct access that emergency services had to the properties via the dissemination of keys to the locks as well as other standard access methods. T. Bill Aff. ¶¶ 12-17.

147.    Although some Plaintiffs had severely restricted ability to access basic necessities, such as food and pet supplies, by walking or snowmobiling across frozen lakes in the area, Plaintiffs' ability to fulfil such needs is disappearing, because as the weather continues to warm up and the ice on top of the lakes melts, it will soon or has already become too dangerous for Plaintiffs to attempt to walk or snowmobile across them. (R. Pearson Decl. ¶¶ 10, 16; J. Spanton Decl. ¶¶ 9-10; M. Hunt Decl. ¶¶ 14-15.)

**<u>Response</u>**: Disputed. The Defendants dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute the portion of the statement that asserts the Plaintiffs cannot continue to access their properties via open waterways and/or airspace. G. Thompson Aff. ¶ 11. The Defendants finally object to the extent this statement does not account for the extensive efforts conducted for the benefit of the Plaintiffs' health, safety, and welfare, by the Tribe through its Tribal Council. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

148.    In conjunction with placing the barricades to block the Roadways, Defendant Johnson announced that any non-Tribal members who went around the barricades to travel on the closed portions of the Roadways would be considered "trespass[ers]". (B. Hubing Decl. ¶ 21, Ex. J.)

**<u>Response</u>**: Disputed. The Defendants dispute the portion of this statement that asserts

that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barricades on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the statement because the cited letter from President Johnson to Town Chairman Matt Gaulke does not contain the announcement claimed. *See* B. Hubing Decl. ¶ 21, Ex. J (requesting a good faith compensation offer "for over ten years of trespass").

149.    The Tribe has demanded $20,000,000 to keep the four Roadways open to the public, after previously demanding $10,000,000 ($7,000,000 for Elsie Lake Lane and $1,000,000 each for the other Roadways). (B. Hubing Decl. ¶ 22, Ex. K.)

**Response**: The Defendants object to this statement as requiring confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute the statement to the extent that it does not acknowledge that the "demand" was for compensation for past and continuing trespass. G. Thompson Aff. ¶ 30. The Defendants also dispute the portion of this statement that relies upon the premise that the barriers are currently in place and does not acknowledge that they were removed from the Roadways on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

150.    The Defendants installed cameras, monitoring Plaintiffs' use of the Roadways, as another form of threatening Plaintiffs with the consequences of alleged trespass. (B. Hubing Decl. ¶ 20, Ex. I.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they installed cameras. T. Bill Aff. ¶ 32. The Defendants further dispute the portion of the statement that alleges they were involved in threatening the Plaintiffs. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

151.    The Pollards, who are 88 years old, received notice only 24 hours in advance that the barricade on Annie Sunn Lane was going to be erected. (D. Pollard Decl. ¶¶ 4, 9.)

**Response**: Undisputed.

152.    The Pollards fled their home before the barricade was erected, taking with them only what they could fit in their car. (D. Pollard Decl. ¶ 10.)

**Response**: Undisputed.

153.    The Pollards were unable to return to their home when the barricade was erected on Annie Sunn Lane. (D. Pollard Decl. ¶ 11.)

**Response**: Disputed. The Defendants dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute this statement to the extent that it asserts the Pollards did not have a choice in their own actions. G. Thompson Aff. ¶ 11; G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

154.    Mr. Pollard is unable to physically walk across the nearby frozen lake in order to get to his home. (D. Pollard Decl. ¶ 11.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

155.    The Pollards and the other residents on Annie Sunn Lane are unable to freely access their properties when the barricades are fully constructed because of the barricade Defendants unlawfully placed on Annie Sunn Lane. (D. Pollard Decl. ¶¶ 6-7.)

**Response**: Disputed. The Defendants dispute the portion of this statement that asserts

that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that Plaintiffs were prevented from "freely access[ing] their properties" because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11. The Defendants finally dispute that they acted unlawfully because no legal rights-of-way exists for the portion of the Roadway on which the barrier was placed, and it is not otherwise a public road. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

156.    The Pollards fear that their home, which Mr. Pollard helped build, will be vandalized while they are unable to access it. (D. Pollard Decl. ¶¶ 5, 12.)

**Response**: Disputed in part. The Defendants do not dispute the mental impressions of the Pollards, but the Defendants dispute the portion of the statement that attempts to place the blame for that impression on the Defendants, given the affirmative actions taken by the Tribe, acting through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

157.    The Pollards also are extremely concerned that, when the barricades are fully constructed, emergency vehicles, such as fire engines, ambulances, and police cars, will be delayed getting to—or entirely denied access to—their home or other homes on Annie Sunn Lane because they need to wait for someone—and hope that someone eventually comes—to open the barricade. (D. Pollard Decl. ¶ 15.)

**<u>Response</u>**: Disputed in part. The Defendants do not dispute the mental impressions of the Pollards, but the Defendants dispute the portion of the statement that attempts to place the blame for that impression on the Defendants, given the affirmative actions taken by the Tribe, acting through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners, including the provision, or offer, of keys to the locks to emergency personnel. T. Bill Aff. ¶¶ 10-28, Ex. A.

158.    The barricade on Annie Sunn Lane disrupted medical procedures that Mr. Pollard needs. (D. Pollard Decl. ¶ 14.)

**<u>Response</u>**: Disputed in part. The Defendants do not dispute the assertion of Mr. Pollard, but the dispute the portion of the statement that attempts to place the blame for that on the Defendants, given the affirmative actions taken by the Tribe, acting through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners, including arranging access for medical appointments. T. Bill Aff. ¶¶ 10-28, Ex. A. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

159.    Mr. Pollard and Ms. Pollard have both suffered extreme emotional distress and have experienced both anxiety and stress caused by the road closures. (D. Pollard Decl. ¶¶ 13- 16.)

**<u>Response</u>**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts taken by the Tribe, through its Tribal Council, to

protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.;
G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the
portion of this statement that relies upon the premise that the barrier is currently in place and
does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff.
¶ 26; G. Thompson Aff. ¶ 29.

160.    The extreme emotional distress and anxiety Mr. Pollard and Ms. Pollard suffered
due to the barricading of the road will have a lasting impact on them for the rest of their lives. (D.
Pollard Decl. ¶¶ 13, 16.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-
stated mental health assertions, but do dispute the portion of the statement that attempts to assert
that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac
du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues,
especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect
the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G.
Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of
this statement that implies that they, and not the Tribal Council acting as the governing body for
the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12,
Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

161.    The Spantons and the other residents on Center Sugarbush Lane are unable to freely
access their properties when the barricades are fully constructed by the Defendants on Center
Sugarbush Lane. (J. Spanton Decl. ¶¶ 4-5.)

**Response**: Disputed. The Defendants dispute the portion of this statement that asserts
that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or

cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that Plaintiffs were prevented from "freely access[ing] their properties" because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11. The Defendants finally dispute that they acted unlawfully. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G.

162.    Mr. Spanton received less than 24 hours' notice that the barricade would be placed blocking access to his home. (J. Spanton Decl. ¶ 7.)

**Response**: Undisputed.

163.    The Spantons, who were blocked in their home, accessed their property by snowmobile approximately one mile across a lake, but the warm weather has caused the ice to become unsafe for the machinery or to walk (along with their dog) across. (J. Spanton Decl. ¶¶ 9-10.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute that the named Plaintiffs were "blocked in their home." G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

164.    The Spantons' security cameras show tribal police members, who showed up one evening in an unmarked car without police uniforms, peering in the windows of his home. (J. Spanton Decl. ¶ 12.) Because of this and other incidents, Mr. Spanton and Ms. Spanton fear that their home will be vandalized or burglarized if they are forced to leave for a long period of time. (J. Spanton Decl. ¶ 13.)

**Response**: Disputed in part. The Defendants do not dispute the mental impressions of the Spantons, but the Defendants dispute the portion of the statement that attempts to place the blame for that impression on the Defendants, given the affirmative actions taken by the Tribe, acting through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants finally dispute that tribal police officers conducted welfare checks or property checks without proper identification. T. Bill Aff. ¶ 29.

165.    Mr. Spanton and Ms. Spanton have been extremely emotionally distressed due to the fact that they cannot freely come and go from their home when the barricades are fully constructed on the Roadway. (J. Spanton Decl. ¶ 14.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts made to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that asserts that Plaintiffs were prevented from "freely access[ing] their properties" because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

166.    Mr. Spanton and Ms. Spanton also are extremely stressed that, when the barricades are fully constructed, emergency vehicles, such as fire engines, ambulances, and police cars, will

be delayed getting to—or entirely denied access to—their home because they need to wait for someone—and hope that someone eventually comes—to open the barricades. (J. Spanton Decl. ¶ 15.)

**Response**: Disputed in part. The Defendants do not dispute the mental impressions of the Spantons, but the Defendants dispute the portion of the statement that attempts to place the blame for that impression on the Defendants, given the affirmative actions taken by the Tribe, acting through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners, including the provision, or offer, of keys to the locks to emergency personnel. T. Bill Aff. ¶¶ 10-28, Ex. A.

167.    The extreme emotional distress Mr. Spanton and Ms. Spanton suffered due to the barricading of the road will have a lasting effect on the rest of their lives. (J. Spanton Decl. ¶¶ 14, 16.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

168.    The Pearsons and the other residents on East Ross Allen Lake Lane are unable to

freely access their properties when the barricades are fully constructed by the Defendants on East Ross Allen Lake Lane. (R. Pearson Decl. ¶¶ 4-5.)

**Response**: Disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that Plaintiffs were prevented from "freely access[ing] their properties" because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

169.    Rachel Pearson received less than 24 hours' notice that the barricade would be placed blocking access to her home. (R. Pearson Decl. ¶ 7.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that Ms. Pearson had no other access to her home. G. Thompson Aff. ¶ 11.

170.    Ms. Pearson and Mr. Pearson are unable to leave their home by car when the barricades are fully constructed by the Defendants on East Ross Allen Lake Lane. (R. Pearson Decl. ¶¶ 4, 8-9.)

**Response**: The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

171.    Ms. Pearson's car was blocked in by the barricade, while Mr. Pearson's car was blocked out by the barricade on East Ross Allen Lake Lane. (R. Pearson Decl. ¶ 8.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that

implicitly asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

172.    In order to get to work, Ms. Pearson traveled by snowmobile, then walked across a frozen lake, then cut across a neighbor's property which has access to a public road, where Mr. Pearson picked her up and drove her to work in the City of Rhinelander before driving to his job in Wausau. (R. Pearson Decl. ¶¶ 10-11.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that implicitly asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

173.    Because this is the only viable way for Ms. Pearson and Mr. Pearson to get to and from work from and to their home when the barricades are fully constructed by the Defendants, Ms. Pearson was staying an additional hour at work daily to allow Mr. Pearson the opportunity to work his full shift. The Pearsons were getting home from work two hours later than usual as a result. (R. Pearson Decl. ¶¶ 12-13.)

**Response**: Disputed in part. The Defendants do not dispute the stated actions of the named Plaintiffs, but dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

174.    Ms. Pearson was also getting up an hour and a half earlier than usual each morning to accommodate the required time to dress and travel by snowmobile and on foot over a frozen lake to get to work. (R. Pearson Decl. ¶¶ 10-14.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that implicitly asserts that the barrier is currently in place and does not acknowledge that it was

removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

175.    Although Ms. Pearson and Mr. Pearson used a snowmobile across a frozen lake to leave their home when the barricades were fully constructed by the Defendants, the ice on the lake is melting which will soon make it impossible to get to their jobs in Rhinelander and Wausau, causing them to fear that they will both lose their jobs. (R. Pearson Decl. ¶¶ 16-17.)

**Response**: The Defendants do not dispute the mental impressions of the Pearsons, but the Defendants dispute the portion of the statement that attempts to place the blame for that impression on the Defendants, given the affirmative actions taken by the Tribe, acting through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A. The Defendants further dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

176.    Because Ms. Pearson has to walk across a frozen lake and travel via snowmobile to get home when the barricades are fully constructed by the Defendants, she cannot carry more than a few items at a time; as a result, she cannot get all the groceries she needs, nor can she carry much food for her dog. (R. Pearson Decl. ¶¶ 14-15.)

**Response**: Disputed in part. The Defendants do not dispute the physical capabilities of Ms. Pearson, but do dispute that she did not have other means of accessing the stated groceries or dog food, including through the grocery delivery services offered by the Tribe, through its Tribal Council and employees. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27. The

Defendants further dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

177.    When the barricades are fully constructed by the Defendants, Ms. Pearson purportedly can only freely go to and from her home for medical appointments; however, to do so she would be forced to provide her private, sensitive medical information to Tribal Police to be let through the barricade, which she does not want to do. (R. Pearson Decl. ¶¶ 19-20; B. Hubing Suppl. Decl. ¶¶ 4-5, Exs. B & C.)

**Response**: Disputed in part. The Defendants do not dispute the stated decisions made by Ms. Pearson, but do dispute that she would have needed to provide any detailed medical information to the Tribe's Police Department. T. Bill Aff. ¶¶ 25-26. The Defendants further dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

178.    When the barricades are fully constructed by the Defendants, Ms. Pearson and Mr. Pearson experience extreme emotional distress because of being held against their will and not being able to travel freely to and from their home, and at the prospect of potentially losing their jobs. (R. Pearson Decl. ¶¶ 17-18.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert

that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac

du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues,

especially in light of the extensive efforts taken by the Tribe, through its Tribal Council, to

protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.;

G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants dispute the portion of

this statement that asserts that they, and not the Tribal Council acting as the governing body for

the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen

Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of

this statement that asserts that Plaintiffs were "held against their will." G. Thompson Aff. ¶¶ 31-

32; J. Allen Aff. ¶¶ 34-35. The Defendants also dispute the portion of this statement that asserts

they were not able to "travel freely to and from their home," because it does not address access

to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

179.    When the barricades are fully constructed by the Defendants, Ms. Pearson and Mr.

Pearson experience extreme stress that emergency vehicles, such as fire engines, ambulances, and

police cars, will be delayed getting to—or entirely denied access to—their home because they need

to wait for someone—and hope that someone eventually comes—to open the barricades. (R.

Pearson Decl. ¶ 21.)

**Response**: Disputed in part. The Defendants do not dispute the mental impressions of the

Pearsons, but the Defendants dispute the portion of the statement that attempts to place the blame

for that impression on the Defendants, given the affirmative actions taken by the Tribe, acting

through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners,

including the provision, or offer, of keys to the locks to emergency personnel. T. Bill Aff. ¶¶ 10-

28, Ex. A.; G. Thompson Aff. ¶¶ 25-27. The Defendants also dispute the portion of this statement

that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

180.   Ms. Pearson suffered from depression and anxiety prior to this situation, and her inability to travel freely to and from her home exacerbated these conditions. (R. Pearson Decl. ¶ 22.)

**Response**: Disputed in part. The Defendants do not dispute the self-stated mental health assertions of Ms. Pearson, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that asserts they were not able to "travel freely to and from their home," because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

181.   Ms. Pearson was concerned that she may reach a breaking point with her mental health and will not have access to the urgent help she may need due to the barricade blocking access to her home. (R. Pearson Decl. ¶ 23.)

**Response**: Disputed in part. The Defendants do not dispute the self-stated mental health assertions of Ms. Pearson, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues,

especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that impliedly asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

182.    The extreme emotional stress and anxiety Ms. Pearson and Mr. Pearson suffered due to the barricading of the road will have a lasting effect on the rest of their lives. (R. Pearson Decl. ¶¶ 18, 24.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

183.    Like the Pearsons, Ms. Kester and her 17-year-old daughter are East Ross Allen Lake Lane residents whose access to their home is blocked by Defendants when the barricades are fully constructed. (P. Kester Decl. ¶¶ 4-5.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to

place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex.

B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute that "access to their home is

blocked" when only a disruption to the roadway access has occurred. G. Thompson Aff. ¶ 11.

184.    Ms. Kester and her daughter received less than 24 hours' notice that the barricade

would be placed on East Ross Allen Lake Lane on January 31, 2023. (P. Kester Decl. ¶¶ 6-7.)

**Response**: Undisputed.

185.    Like the Pollards, Ms. Kester and her daughter were forced to flee their home and

were prevented from living in or accessing their home. (P. Kester Decl. ¶ 8.)

**Response**: Disputed. The Defendants dispute the portion of this statement that relies

upon the premise that the barrier is currently in place and does not acknowledge that it was

removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The

Defendants also dispute this statement to the extent that it asserts the Ms. Kester did not have a

choice in her own actions, or that any one or any entity "forced" her to make any decision. G.

Thompson Aff. ¶ 11; G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

186.    Because of the barricade, Ms. Kester was prevented from getting her daughter to

and from school. (P. Kester Decl. ¶ 8.)

**Response**: Disputed in part. The Defendants dispute the portion of the statement that

asserts the Plaintiffs cannot continue to access their properties via open waterways and/or

airspace. G. Thompson Aff. ¶ 11. The Defendants also dispute the portion of this statement that

asserts that the barrier is currently in place and does not acknowledge that it was removed on

March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

187.    Ms. Kester's daughter has special needs and medical conditions that cause learning

disabilities. (P. Kester Decl. ¶ 9.)

**Response**: Undisputed.

188.    In September 2022, Ms. Kester's daughter was thriving (academically, personally, and socially) in school for the first time in a long time upon starting to attend Minocqua Lakeland Union High School ("LUHS") as a senior. (P. Kester Decl. ¶ 10.)

**Response**: Undisputed.

189.    Ms. Kester was forced to quickly decide to leave their home upon receiving less-than-24-hour notice before the Defendants put up the barricade. Her decision was based on the extreme stress her daughter would face being blockaded into their home and, due to their Wi-Fi and phone reception being poor, it would have been impossible for her daughter to continue her coursework from home. (P. Kester Decl. ¶ 11.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiff's self-stated mental health assertions or the named Plaintiff's access to Wi-Fi or phone connection strength, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed issues, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

190.    The morning after receiving less-than-24-hour notice of the barricade going up on the Roadway, at 7:00 A.M., in -20-degree weather, Ms. Kester and her daughter packed a few pieces of clothing, their two dogs, and all of Ms. Kester's daughter's stuffed animals into the car,

leaving for Iowa where her father and brother live. At that time, they thought the barricade would be up for a few days. (P. Kester Decl. ¶ 12.)

**Response**: Undisputed.

191.    The Defendants' barricading of East Ross Allen Lake Lane caused ongoing extreme stress and fright to Ms. Kester's daughter and, once in Iowa, her daughter struggled with schoolwork, especially in light of her daughter's special education needs. Her daughter has become despondent and depressed with little energy or interest for her schoolwork. (P. Kester Decl. ¶¶ 13-17.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiff's and family member's self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed issues, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

192.    Ms. Kester tried to find housing within a couple hours' drive from LUHS, but the only rentals available were too expensive or were only available for insufficient time, and the transition of moving from place-to-place is extremely difficult for her daughter. (P. Kester Decl. ¶ 18.)

**Response**: Undisputed.

193.     With the help of student services and Ms. Kester's daughter's caseworker at school, they decided to drop 3 of her daughter's 4 classes. She was taking only one class, Human Geography, because of the barricades, and continued to struggle. (P. Kester Decl. ¶ 19.)

**Response**: Undisputed.

194.     Ms. Kester's daughter does not want to go to a different school. She wants to return to LUHS where she has had more success than ever before. (P. Kester Decl. ¶ 28.)

**Response**: Undisputed.

195.     Ms. Kester's daughter was only able to meet with her speech therapist on Zoom once during the blockades of the Roadways. (P. Kester Decl. ¶ 20.)

**Response**: Undisputed.

196.     Because of the barricade and inability to return to their home, Ms. Kester's daughter was unable to receive therapy that has proven to be beneficial. (P. Kester Decl. ¶ 21.)

**Response**: Disputed in part. The Defendants dispute the portion of the statement that asserts the Plaintiffs cannot continue to access their properties via waterways and/or airspace, or that Ms. Kester's actions were forced in any way. G. Thompson Aff. ¶¶ 11, 31-32; J. Allen Aff. ¶¶ 34-35. The Defendants also dispute the portion of this statement that asserts that the barrier is currently in place and does not acknowledge that it was removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

197.     Ms. Kester's daughter has a congenital heart defect that resulted in palpitations, which she experiences when she is stressed. (P. Kester Decl. ¶ 22.)

**Response**: Undisputed.

198.     After fleeing their home and arriving in Iowa, Ms. Kester's daughter had a prolonged session of palpitations. Usually, her palpitations last 1-2 minutes, but this time they

lasted over one hour, and she began feeling lightheaded. Enroute to the emergency room, she also began experiencing chest pain. Her palpitations lasted over 2 hours. (P. Kester Decl. ¶¶ 23- 25.)

**Response**: Undisputed.

199.    The doctor determined Ms. Kester's daughter likely had a panic attack, and Ms. Kester has no doubt at all that her daughter's panic attack was caused by Defendants' barricading the Roadway and Ms. Kester and her daughter having to flee their home and being displaced for what was four weeks. (P. Kester Decl. ¶ 26.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

200.    Ms. Kester's daughter was very aware of what is happening regarding the Defendants' act of barricading the Roadways, including threats made to one of the Kesters' neighbors and multiple threats made on social media to set fire to their homes. (P. Kester Decl.

¶ 27.)

**Response**: Disputed in part. The Defendants do not dispute the internal self-stated mental impressions of Ms. Kester's daughter, but dispute the statement to the extent that it attempts to assert that the Defendants were responsible for the alleged threats. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

201.    The extreme stress, anxiety, and fear Ms. Kester and Ms. Kester's daughter have experienced and are experiencing because of Defendants' acts will likely take years for her daughter to overcome. Her mental and physical health are suffering. She practically forfeited a semester of school and completely lost the sense of stability and security they previously had in their home at the address of 14896 Redpoll Lane, Lac du Flambeau, WI, which is only accessible by roadway via East Ross Allen Lake Lane. (P. Kester Decl. ¶¶ 1-4, 29.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiff (and family member's) self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

202.    Defendants' act of barricading East Ross Allen Lake Lane has caused and will continue to cause Ms. Kester's daughter incontrovertible harm. (P. Kester Decl. ¶ 30.)

**Response**: Disputed. The Defendants dispute that the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the self-stated harm, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27;  B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that states that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers across East Ross Allen Lake Lane. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H.

203.    Ms. Kilger and many other residents on Elsie Lake Lane are unable to freely access their properties when the Defendants' barricades are fully constructed on Elsie Lake Lane. (J. Kilger Decl. ¶¶ 3-4.)

**Response**: Disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that Plaintiffs were prevented from "freely access[ing] their properties" because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

204.    Ms. Kilger only received a 16-hour notice that the barricade would be placed on Elsie Lake Lane. (J. Kilger Decl. ¶ 6.)

**Response**: Undisputed.

205.    At the time Ms. Kilger received notice that the barricade would be placed on Elsie

Lake Lane, it was -22 degrees Fahrenheit. In an attempt to ensure her car would be accessible after the barricade was erected, she parked her car outside of the barricaded area before the barricade was erected and walked home across the lake in -22-degree Fahrenheit weather. (J. Kilger Decl. ¶ 7.)

**Response**: Undisputed.

206.    Ms. Kilger resorted to walking across a frozen lake that abuts her property in order to access her vehicle to go to work, get groceries, and remove trash from her home. (J. Kilger Decl. ¶ 8.)

**Response**: Disputed in part. The Defendants do not dispute that Ms. Kilger chose to engage in the listed actions, but do dispute that there were no other options made available to her by the Tribe, through its Tribal Council, including the possibility of arranging for deliveries of groceries and garbage pickup. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

207.    Prior to the barricade being erected on Elsie Lake Lane, Ms. Kilger and her fiancé, Erick Runkle, had spent four months preparing to move to their new home in L'Anse, Michigan. (J. Kilger Decl. ¶ 11.)

**Response**: Undisputed.

208.    The barricade on Elsie Lake Lane prevented Ms. Kilger and Mr. Runkle from being able to complete their move to Michigan. (J. Kilger Decl. ¶ 12.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' chosen actions to not complete their move, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the stated issue. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J.; J. Peterson Aff. ¶ 11;

J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

209.    As part of their moving plans, Mr. Runkle had planned to transfer within his company—Trident Manufacturing—to a plant in Ontonagon, Michigan. (J. Kilger Decl. ¶ 15.)

**Response**: Undisputed.

210.    Mr. Runkle was prevented from completing his transfer to the Trident plant in Michigan due to the barricade on Elsie Lake Lane and its impact on Ms. Kilger's and Mr. Runkle's ability to move to Michigan. (J. Kilger Decl. ¶ 16.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' chosen action to not complete Mr. Runkle's transfer, or complete their move, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the stated issue. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

211.    Additionally, the barricade erected on Elsie Lake Lane forced Ms. Kilger and Mr. Runkle to abandon their plans to sell their Elsie Lake Lane home in May 2023; instead, they were forced to wait until 2024 to sell their home and were forced to incur the unexpected cost of owning and maintaining two homes simultaneously. (J. Kilger Decl. ¶¶ 13-14.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' chosen

actions to not sell their home, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the stated issue. The expired rights-of-way on the Roadways has been an open and public issue for close to a decade. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D; A. Adams Aff. ¶¶ 5-7. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

212.    Ms. Kilger has suffered extreme emotional distress and anxiety due to the fact that she was unable to feely come and go from her home. (J. Kilger Decl. ¶ 9.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiff's self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute the portion of this statement that asserts that the named Plaintiff was "unable to feely [*sic*] come and go from her home" because the Defendants never acted to bar all access to any Plaintiff's home. G. Thompson Aff. ¶ 11; G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

213.     Ms. Kilger is also extremely stressed that, when the barricades are fully constructed, emergency vehicles will not be able to promptly (or at all) access her home in the event of a medical emergency, fire, or crime. (J. Kilger Decl. ¶ 10.)

**Response**: Disputed in part. The Defendants do not dispute the mental impressions of the named Plaintiff, but the Defendants dispute the portion of the statement that attempts to place the blame for that impression on the Defendants, given the affirmative actions taken by the Tribe, acting through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners, including the provision, or offer, of keys to the locks to emergency personnel. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

214.     The extreme emotional distress and anxiety Ms. Kilger suffered due to the barricading of the Roadway will have a lasting effect on her for the rest of her life. (J. Kilger Decl. ¶¶ 9, 17.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiff's self-stated mental health assertions, but do dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the listed mental health issues, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J.

215.     Some Plaintiffs and other residents impacted by Defendants' blockade of the Roadways were forced to flee their homes. (D. Pollard Decl. ¶ 10; P. Kester Decl. ¶ 8.)

**Response**: Disputed. The Defendants dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was

removed from the Roadway on March 13, 2023. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H; J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute this statement to the extent that it asserts that "[s]ome Plaintiffs and other residents" did not have a choice in their own actions, or that anyone or any entity "forced" them to make any decision. G. Thompson Aff. ¶ 11; G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

216.     When the barricades are fully constructed, Plaintiffs are unable to use the Roadways to leave their residential neighborhoods, even to obtain sufficient necessities such as groceries and food, pet supplies and home repair materials. (J. Kilger Decl. ¶ 8; R. Pearson Decl. ¶¶ 14-15; J. Spanton Decl. ¶ 8; M. Hunt Decl. ¶¶ 13-14.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that ignores that the Tribe, acting through its Tribal Council, made provisions to ensure the health, safety, and wellbeing of the impacted homeowners. To date, this has included regular deliveries, arranged by the Tribe, of mail, medications, food, pet food, and gas to the affected residents, as well as road maintenance, property checks, arrangements for necessary home improvements, including roof repair, tree service, and new appliances, and garbage pickup. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

217.     When the barricades are fully constructed on the Roadways, Plaintiffs are only able to use the Roadways to leave their residences if they have medical appointments or to pick up or receive prescription medications; if Plaintiffs leave for any other reason, they are not allowed back through the barricades to return home. (B. Hubing Suppl. Decl. ¶¶ 4-5, Exs. B & C.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

218.   Even to attend medical appointments, when the barricades are fully constructed on the Roadways, Plaintiffs must call Tribal police to unlock the chains on the barricades and wait until an officer arrives with the proper key to let Plaintiffs in and out. (R. Pearson Decl. ¶ 19.)

**Response**: Disputed in part. The Defendants dispute the portion of the statement that asserts the Plaintiffs cannot continue to access their properties via waterways and/or airspace. G. Thompson Aff. ¶ 11. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

219.   Due to snowbanks, trees, and natural terrain, the concrete blocks that remain on the Roadways may prevent emergency and other vehicles from getting to Plaintiffs' homes and properties, and when the barricades are fully constructed on the Roadways the barricades prevent vehicles from passing. (See B. Hubing Decl. ¶¶ 16-19, Exs. E-H.)

**Response**: Disputed. The Defendants dispute that emergency and other vehicles cannot access Plaintiffs' homes and properties by driving in between the concrete blocks. G. Thompson Aff. ¶ 21. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

220.   As a result of Defendants' actions, threats, and likely, imminent actions, Plaintiffs have suffered irreparable harm, continue to suffer irreparable harm, and will suffer further irreparable harm (without relief from the Court) by being unable to freely or reasonably access their homes and leave their residences to attend to daily activities and live normal livelihoods. (*See* D. Pollard Decl. ¶¶ 13, 16; J. Spanton Decl. ¶¶ 14,16; R. Pearson Decl. ¶¶ 18, 22-24; J. Kilger Decl. ¶¶ 9, 17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S.

Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33.)

    **Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute that they have made any described threats against the named Plaintiffs. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35. The Defendants dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused alleged harm to the Plaintiffs through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

    221.   When or if the barricades are fully reconstructed again such that the chains connecting the concrete or cement blocks on the Roadways are again locked, the above-mentioned circumstances relating to Plaintiffs and others similarly situated when the chains are connected and locked on the Roadways will exist again and compound past and ongoing irreparable harm with further irreparable harm. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin

Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged past and alleged ongoing harm to the Plaintiffs through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

222.    There is an absolute immediate need to keep the Roadways open to avert imminent harm to Plaintiffs and other residents similarly situated. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Plaintiffs have failed to show any imminent harm, and these allegations are refuted through the extensive efforts conducted for the benefit of the Plaintiffs' health, safety, and welfare, by the Tribe through its Tribal Council. To date, this has included regular deliveries, arranged by the Tribe, of mail, medications, food, pet food, and gas to the Plaintiffs, as well as road maintenance,

property checks, arrangements for necessary home improvements, including roof repair, tree service, and new appliances, and garbage pickup. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

223.    Plaintiffs have been irreparably harmed and continue to be irreparably harmed by the Defendants' unlawful actions in barricading, and threatening to barricade and the mere likely and imminent prospect of re-barricading, the Roadways. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged harm to the Plaintiffs through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.

224.    Plaintiffs continue to be irreparably harmed by the imminent, high likelihood of the Defendants again fully reconstructing the barricades on the Roadways. (M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33.)

**Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe have the ability to vote to place, or cause to be placed, the barriers on the Roadways following the expiration of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged harm to the Plaintiffs through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.

225.    Plaintiffs face highly likely, imminent irreparable harm by and will be irreparably harmed when the Defendants again fully reconstruct the barricades on the Roadways, which is threatened and likely to happen on or immediately after June 13, 2023, if not earlier. (B. Hubing Suppl. Decl. ¶ 3, Ex. A; D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-

24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl.

¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33;P. Kester Decl.

¶¶ 1-29.)

    **Response**: The Defendants object that this statement contains a legal conclusion or

argument that does not require a response. To the extent a response is required, disputed. The

Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council

acting as the governing body for the Tribe have the ability to vote to place, or cause to be placed,

the barriers on the Roadways following the expiration of the Temporary Access Permits. J. Allen

Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute the portion of this statement that asserts that

the barriers are currently in place and does not acknowledge that they were removed on March

13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute that it is the

actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau,

or the Title Insurance Companies that have caused the alleged harm to the Plaintiffs through their

failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J;

J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The

Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its

Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff.

¶¶ 10-28, Ex. A.

    226.    The Defendants' will very likely reconstruct, assist in reconstructing, or cause the

reconstruction of, the barricades on the Roadways upon the revocation or expiration of the

Revocable Temporary Access Permits. (B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C; Am. Compl.

¶¶ 172, 183.)

    **Response**: The Defendants object to this statement as requiring in part confirmation or

information from an entity not a part of this lawsuit. To the extent a response is required, disputed. The Defendants dispute that they, and not the Tribal Council acting as the governing body for the Tribe have the ability to vote to place, or cause to be placed, the barriers on the Roadways following the revocation or expiration of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F.

227.    Since closing the Roadways, Plaintiffs and others similarly situated have been receiving offers from tribal members to sell their properties for 25 cents on the dollar.  One resident whose home is served by a Roadway received an offer of $5,000 for the resident's home. (M. Hunt Decl. ¶¶ 37-38.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, undisputed.

228.    A tribe member has said to one Plaintiff: "We know our complaint is with the federal government, but we can't barricade their homes." (M. Hunt Decl. ¶ 37.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute the portion of the statement that attempts to inappropriately link the actions of unknown individuals to the Defendants. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

229.    Plaintiffs have also received threats on social media from Defendants or other tribal members to leave and never come back. (M. Hunt Decl. ¶ 39; M. Hornbostel Decl. ¶¶ 22-28, Ex. C.)

**Response**: The Defendants object to this statement as requiring in part confirmation or

information from an entity not a part of this lawsuit. To the extent a response is required, disputed. The Defendants dispute that they have ever made any threats, whether via social media or otherwise, to the Plaintiffs. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35. The Defendants also dispute the portion of the statement that attempts to inappropriately link the actions of unknown individuals to the Defendants.

230.    Other Plaintiffs have now been banished by the Defendants from buildings owned by the Tribe or any tribal entities, ostensibly including the tribal courthouse. (M. Hornbostel Decl. ¶¶ 15-21, Exs. A & B.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute that they, and not the Tribal Council acting as the governing body for the Tribe voted on a resolution barring Michael Hornbostel and Marsha Panfil from buildings owned by the Tribe. *See* M. Hornbostel Decl. Ex. B. at 3 (certification identifying a vote of the Tribal Council in favor of the resolution). The Defendants further dispute the portion of this statement that attempts to assert that the named Plaintiffs would not have access to the Tribe's Tribal Court to participate in proceedings. A. Adams Aff. ¶¶ 3-4.

231.    Such banishment is apparently in retaliation for the Plaintiffs' participation in this lawsuit and/or for speaking publicly about the Defendants' actions. (M. Hornbostel Decl. ¶¶ 15-28, Exs. A-C.)

**Response**: The Defendants object to this statement as requiring in part confirmation or information from an entity not a part of this lawsuit. To the extent a response is required, disputed in part. The Defendants dispute that they, and not the Tribal Council acting as the governing body for the Tribe voted on a resolution barring Michael Hornbostel and Marsha

Panfil from buildings owned by the Tribe. *See* M. Hornbostel Decl. Ex. B. at 3 (certification identifying a vote of the Tribal Council in favor of the resolution). The Defendants further dispute that the resolution describes such exclusion as occurring because of "participation in this lawsuit and/or for speaking publicly about the Defendants' actions" because the resolution clearly states it is because of the "racist remarks directed at the Tribe and Tribal Members" made by the named individuals. *See* M. Hornbostel Decl. Ex. B. at 2.

232.    All Plaintiffs are irreparably harmed by the ongoing constraints posed by the revocable temporary access permits and status quo, including by the Defendants limiting use of the Roadways via the issuance of permits and by the Defendants placing, assisting in placing, or causing the placement of, large cement blocks that presently remain on the Roadways and serve as vivid reminders of the recent mental suffering Plaintiffs experienced during the six weeks of being barricaded into or out of their homes and properties. (M. Hornbostel Decl. ¶¶ 8-12; M. Hunt Decl. ¶¶ 11-35; M. Possin Decl. ¶¶ 5-15; S. Fermanich Decl. ¶¶ 5-24; J. Walsh Decl. ¶¶ 5- 11; J. Hunt Decl. ¶¶ 8-33.)

**Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe have the ability to vote to place, or cause to be placed, the barriers on the Roadways following the expiration of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau,

or the Title Insurance Companies that have caused the alleged harm to the Plaintiffs through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A. The Defendants finally dispute that they have been "barricaded into or out of their homes and properties" because no actions have been taken to control the personal movements of the Plaintiffs. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

233.    The mere threat of the imminent and likely re-barricading of the Roadways currently irreparably harms Plaintiffs in the form of mental suffering and retraumatizing recent experienced irreparable harm caused by the six-week Roadways' barricading by Defendants. (M. Hornbostel Decl. ¶¶ 8-12; M. Hunt Decl. ¶¶ 11-35; M. Possin Decl. ¶¶ 5-15; S. Fermanich Decl. ¶¶ 5-24; J. Walsh Decl. ¶¶ 5-11; J. Hunt Decl. ¶¶ 8-33.)

**Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe have the ability to vote to place, or cause to be placed, the barriers on the Roadways following the expiration of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged harm to the Plaintiffs through their

failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.

234.    All Plaintiffs will soon be further irreparably harmed when the revocable temporary access permits are no longer in effect and the barricades are fully reconstructed (i.e., when the chains connecting the concrete or cement blocks on the Roadways are relocked and the wood barriers reinstalled on the Roadways). (M. Hornbostel Decl. ¶¶ 8-12; M. Hunt Decl. ¶¶ 11- 35; M. Possin Decl. ¶¶ 5-15; S. Fermanich Decl. ¶¶ 5-24; J. Walsh Decl. ¶¶ 5-11; J. Hunt Decl. ¶¶ 8-33.)

**Response**: The Defendants object that this statement contains a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe have the ability to vote to place, or cause to be placed, the barriers on the Roadways following the expiration of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute the portion of this statement that asserts that the barriers are currently in place and does not acknowledge that they were removed on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants also dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged harm to the Plaintiffs through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its

Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.; G. Thompson Aff. ¶¶ 25-27.

235.    The Defendants intentionally erected barricades on the Roadways. (B. Hubing Decl. ¶ 21, Ex. J; B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1-2.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29.

236.    If or when Defendants fully reconstruct the barricades on the Roadways, such action will be intentional. (B. Hubing Decl. ¶ 21, Ex. J; B. Hubing Suppl. Decl. ¶ 3, Ex. A at 1- 2.)

**Response**: Disputed in part. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe have the ability to vote to place, or cause to be placed, the barriers on the Roadways following the expiration of the Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F.

237.    The Defendants unreasonably erected barricades on the Roadways. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: Disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J.

Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that relies

upon the premise that the barrier is currently in place and does not acknowledge that it was

removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The

Defendants finally dispute that the barriers were "unreasonably erected" because the Roadways

traverse lands without the required legal rights-of-way, and the Plaintiffs, and all affected

homeowners, were aware of the lack of rights-of-way before the barriers were placed. B. Hubing

Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-

D.

238.    If or when Defendants fully reconstruct the barricades on the Roadways, such

action will be unreasonable. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl.

¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin

Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester

Decl. ¶¶ 1-29.)

**Response**: Disputed. The Defendants dispute the portion of this statement that asserts

that they, and not the Tribal Council acting as the governing body for the Tribe have the ability to

vote to place, or cause to be placed, the barriers on the Roadways following the expiration of the

Temporary Access Permits. J. Allen Aff. ¶¶ 23-26, Ex. F. The Defendants also dispute that any

action to replace the barriers would be "unreasonable" because the Roadways traverse lands

without the required legal rights-of-way, and the Plaintiffs, and all affected homeowners, were

aware of the lack of rights-of-way before the barriers were placed, and remain aware of the legal

conditions. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J.

Peterson Aff. ¶¶ 12-19, Ex. A-D.

239.    Plaintiffs have extreme distress and/or anxiety due to the temporary access status

of the Roadways and due to the prospect of the barricades being fully reconstructed and the resulting consequences therefrom on their livelihoods. (M. Hornbostel Decl. ¶ 11; M. Hunt Decl. ¶¶ 11-12; M. Possin Decl. ¶¶ 14-15; S. Fermanich Decl. ¶¶ 23-24; J. Walsh Decl. ¶¶ 10-11; J. Hunt Decl. ¶ 29.)

**Response**: Disputed in part. The Defendants do not dispute the named Plaintiffs' self-stated mental health assertions, but do dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused alleged harm to the Plaintiffs through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.

240.    The Defendants were not and are not privileged to erect or maintain barricades on the Roadways under federal law. (Am. Compl. ¶¶ 161, 181.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute the portion of this statement that relies upon the premise that the barrier is currently in place and does not acknowledge that it was removed from the Roadway on March 13, 2023. J. Allen Aff. ¶ 26; G. Thompson Aff. ¶ 29. The Defendants finally dispute that the barriers were not lawfully placed under federal law because the Roadways traverse lands without

the required legal rights-of-way under the federal system governing access to and across lands held in trust by the United States. *See* 25 C.F.R. Part 169; B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D.

241.    The Defendants' barricading of the Roadways, when the barricades are fully constructed on the Roadways, is a condition or activity that interferes with the private use and enjoyment of Plaintiffs' land. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24, J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants further dispute that the Plaintiffs have any right to use the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. The Defendants finally dispute that they have been involved, individually or as the Tribal Council, with any activity involving the Plaintiffs' lands. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

242.    Some Plaintiffs' and similarly situated residents' complete inability to return to their respective homes when the barricades are fully constructed on the Roadways is an interference with Plaintiffs' private use and enjoyment of their land. (D. Pollard Decl. ¶¶ 1-16; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement provides a legal conclusion or

argument that does not require a response. To the extent a response is required, disputed. The Defendants further dispute that the Plaintiffs have any right to use the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. The Defendants finally dispute that they have been involved, individually or as the Tribal Council, with any activity involving the Plaintiffs' lands. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

243.   Denial of access to Plaintiffs' land is an interference with Plaintiffs' private use and enjoyment of their land. (D. Pollard Decl. ¶¶ 1-16; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute that the Plaintiffs have any right to use the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. The Defendants finally dispute that they have been involved, individually or as the Tribal Council, with any activity involving the Plaintiffs' lands. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

244.   When the barricades are fully constructed on the Roadways, Plaintiffs' inability to freely return via road access to their respective homes causes harm. (D. Pollard Decl. ¶¶ 1-16; P. Kester Decl. ¶¶ 1-29.)

**Response**: Disputed. The Defendants dispute the portion of the statement that attempts to assert that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused any harm, especially in light of the extensive efforts take by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A; G. Thompson Aff. ¶¶ 25-27; B. Hubing Decl. ¶ 21, Ex. J.

245.   When the barricades are fully constructed on the Roadways, Plaintiffs' inability to

freely leave and return to their respective homes is an interference with Plaintiffs' private use and enjoyment of their land that causes harm to Plaintiffs. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute that the Plaintiffs have any right to use the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. The Defendants dispute that they have been involved, individually or as the Tribal Council, with any activity involving the Plaintiffs' lands. G. Thompson Aff. ¶¶ 31-32. J. Allen Aff. ¶¶ 34-35. The Defendants also dispute the portion of this statement that asserts that Plaintiffs are unable to "freely leave and return to their respective homes" because it does not address access to certain of Plaintiffs' properties via waterways or airspace. G. Thompson Aff. ¶ 11.

246.    Unrestricted reasonable access to and from Plaintiffs' homes is a condition or circumstance by which Plaintiffs privately use and enjoy their land, and when the barricades are fully constructed on the Roadways, Defendants restrict said condition or circumstance. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1- 17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that asserts that they, and not the Tribal Council

acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways that allegedly interfere with "said condition or circumstance." J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute that it is their actions, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have "restrict[ed] said condition or circumstance," through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶¶ 12-19, Ex. A-D.

247.   When the barricades are fully constructed on the Roadways, the public is restricted or prevented from accessing or using the Roadways for any lawful purpose. (B. Hubing Suppl. Decl. ¶ 3, Ex. A.)

**Response**: Disputed in part. The Defendants further dispute that the Plaintiffs have any right to use the Roadways. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G. The Defendants also dispute the portion of the statement that asserts that the Roadways were not made available to meet the emergent and non-emergent, necessary needs of the Plaintiffs. T. Bill Aff. ¶¶ 10-28, Ex. A.

248.   The Roadways are "public roads" under federal law. (Am. Compl. ¶ 189.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Roadways are also not public roads as defined in 23 U.S.C. § 101(a)(23) because they are not listed in the NTTFI nor enrolled in the TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

249.    There is a public right for the public to use or access the Roadways because they are "public roads" under federal law. (Am. Compl. ¶¶ 185-186.)

**<u>Response</u>**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Roadways are also not public roads as defined in 23 U.S.C. § 101(a)(23) because they are not listed in the NTTFI nor enrolled in the TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I.

250.    When the barricades are fully constructed on the Roadways, such barricades are a condition or activity which interferes with a public right, that is, the public's right to use or access the Roadways. (Am. Compl. ¶¶ 185-186.)

**<u>Response</u>**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands; because they are not public roads, there is no infringement of a public right. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D.

251.    Public use of the Roadways does not interfere with the Defendants' use (or the lack thereof) of the Roadways. (Am. Compl. ¶¶ 188.)

**<u>Response</u>**: Disputed. The Roadways lie on top of lands held in trust by the United States for the benefit of the Tribe and its members, including the Defendants. J. Peterson Aff. ¶ 7; G. Thompson Aff. ¶ 8; LDF Const. art. III, § 4 (tying Tribal Council candidacy to enrollment in the Tribe). Public use of the Roadways, without a valid right-of-way, causes harm to the property

rights of the Tribe and its members, including the Defendants. LDF Const. art. I (detailing the territory and jurisdiction of the Tribe).

252.    When the barricades are fully constructed on the Roadways, the degree of the injury inflicted by the barricaded Roadways is high, and the character of the injury inflicted by the barricaded Roadways is extensive. (Am. Compl. ¶¶ 190; D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: Disputed. The Tribe, acting through its Tribal Council, has taken extensive efforts to protect the health, safety, and welfare of the homeowners living along the Roadways, including the delivery of necessary supplies, conducting welfare checks, hauling garbage, making allowances for necessary home repairs, keeping the Roadways maintained, and posting a position for an additional officer to keep up with the residents' safety concerns. T. Bill Aff. ¶¶ 10-28, Ex. A; T. Bill Aff. ¶ 38.

253.    When the barricades are fully constructed on the Roadways, Plaintiffs' family, friends, associates, delivery services, and passersby are restricted or prevented from accessing or using the Roadways. (B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C; D. Pollard Decl. ¶¶ 1-11; J. Spanton Decl. ¶¶ 1-8; R. Pearson Decl. ¶¶ 1-9; J. Kilger Decl. ¶¶ 1-10; M. Hornbostel Decl. ¶¶ 1-6; M. Hunt Decl. ¶¶ 1-27; M. Possin Decl. ¶¶ 1-13; S. Fermanich Decl. ¶¶ 1-21; J. Walsh Decl. ¶¶ 1-7; J. Hunt Decl. ¶¶ 1-26; P. Kester Decl. ¶¶ 1-11.)

**Response**: Undisputed.

254.    Barricading of the Roadways is an interference with the public health. (B. Hubing Decl. ¶¶ 16-19, Exs. E-H; B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C; D. Pollard Decl. ¶ 15; R.

Pearson Decl. ¶ 21; J. Kilger Decl. ¶ 10; J. Spanton Decl. ¶ 15; S. Fermanich Decl. ¶ 20; M. Possin Decl. ¶ 13.)

**Response**: Disputed. The Tribe through its Tribal Council, has made extensive efforts to ensure the public health is maintained while the barriers have been in place, including allowances for medical appointments, delivery and pickup of medications, and the provision of information and instructions to necessary emergency personnel, including the provision of keys to the locks on the barriers, as well as necessary sanitation procedures like trash hauling. T. Bill Aff. ¶¶ 10-28, Ex. A

255.    Barricading of the Roadways is an interference with the public safety. (B. Hubing Decl. ¶¶ 16-19, Exs. E-H; B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C; D. Pollard Decl. ¶ 15; R. Pearson Decl. ¶ 21; J. Kilger Decl. ¶ 10; J. Spanton Decl. ¶ 15; S. Fermanich Decl. ¶ 20; M. Possin Decl. ¶ 13.)

**Response**: Disputed. The Tribe through its Tribal Council, has made extensive efforts to ensure the public safety is maintained while the barriers have been in place, including the provision of information and instructions to necessary emergency personnel, such as the provision of keys to the locks on the barriers. T. Bill Aff. ¶¶ 10-28, Ex. A. The residences affected by the barriers, when they were in place, received an exponentially higher amount of public services on a more regular basis than they did before the placement. T. Bill Aff. ¶ 37. The increase in services provided has led to the Department considering hiring additional staff. T. Bill Aff. ¶ 38.

256.    Barricading of the Roadways is an interference with the public peace. (B. Hubing Decl. ¶¶ 16-19, Exs. E-H; B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C; D. Pollard Decl. ¶ 15; R. Pearson Decl. ¶ 21; J. Kilger Decl. ¶ 10; J. Spanton Decl. ¶ 15; S. Fermanich Decl. ¶ 20; M. Possin

Decl. ¶ 13.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Roadways are also not public roads as defined in 23 U.S.C. § 101(a)(23) because they are not listed in the NTTFI nor enrolled in the TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I. Because the Roadways are not public roads, actions taken to restrict access to the Roadways cannot be an interference with public peace, especially in light of the extensive efforts made to ensure the health, safety, and welfare of the Plaintiffs. T. Bill Aff. ¶¶ 10-28, Ex. A.

257.    Barricading of the Roadways is an interference with the public comfort. (B. Hubing Decl. ¶¶ 16-19, Exs. E-H; B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C; D. Pollard Decl. ¶ 15; R. Pearson Decl. ¶ 21; J. Kilger Decl. ¶ 10; J. Spanton Decl. ¶ 15; S. Fermanich Decl. ¶ 20; M. Possin Decl. ¶ 13.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Roadways are also not public roads as defined in 23 U.S.C. § 101(a)(23) because they are not listed in the NTTFI nor enrolled in the TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I. Because the Roadways are not public roads, actions taken to restrict access to the Roadways cannot be an interference with public comfort, especially

in light of the extensive efforts made to ensure the health, safety, and welfare of the Plaintiffs. T. Bill Aff. ¶¶ 10-28, Ex. A.

258.    Barricading of the Roadways is an interference with the public convenience. (B. Hubing Decl. ¶¶ 16-19, Exs. E-H; B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C; D. Pollard Decl. ¶ 15; R. Pearson Decl. ¶ 21; J. Kilger Decl. ¶ 10; J. Spanton Decl. ¶ 15; S. Fermanich Decl. ¶ 20; M. Possin Decl. ¶ 13.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Roadways are also not public roads as defined in 23 U.S.C. § 101(a)(23) because they are not listed in the NTTFI nor enrolled in the TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I. Because the Roadways are not public roads, actions taken to restrict access to the Roadways cannot be an interference with public convenience, especially in light of the extensive efforts made to ensure the health, safety, and welfare of the Plaintiffs. T. Bill Aff. ¶¶ 10-28, Ex. A.

259.    The Defendants' conduct (barricading the Roadways and imminently re-barricading the Roadways) has produced, continues to produce, and will further produce long-lasting (if not permanent) detrimental effect. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: Disputed. The Defendants dispute the portion of this statement that implies

that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged past and alleged ongoing detrimental effects through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.

260.    The Defendants know and have reason to know that the Defendants' conduct (barricading the Roadways and imminently re-barricading the Roadways) had, has, and will have a significant effect upon the public right. (B. Hubing Suppl. Decl. ¶¶ 3-5, Exs. A-C.)

Response: Disputed. The Roadways are not public roads as there are no valid, non-expired rights-of-way for the portions of the roads that cross Indian lands. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Roadways are also not public roads as defined in 23 U.S.C. § 101(a)(23) because they are not listed in the NTTFI nor enrolled in the TTP. J. Allen Aff. ¶¶ 20-22, Ex. E; J. Allen Aff. ¶ 33, Ex. I. Because the Roadways are not public roads, actions taken to restrict access to the Roadways cannot be an interference with a public right.

261.    Plaintiffs have suffered and will suffer harm of a kind different from that suffered by the public exercising the public's right to access and use public roads that was, is, and will be the subject of the Defendants' barricading and re-barricading, in that Plaintiffs' harm is, in part,

the inability to freely and reasonably return to or exit and reenter their personal dwellings and to maintain normal livelihoods connected to their homes, as well as extreme stress and anxiety and other mental conditions from such inability. (D. Pollard Decl. ¶¶ 1-16; J. Spanton Decl. ¶¶ 1-16; R. Pearson Decl. ¶¶ 1-24; J. Kilger Decl. ¶¶ 1-17; M. Hornbostel Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: Disputed. The Defendants dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged past and alleged ongoing detrimental effects through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.

262.     The named Plaintiffs do not make up the entire pool of landowners affected by the Defendants' unlawful actions. (B. Hubing Decl. ¶¶ 6-10.)

**Response**: Disputed in part. The Defendants dispute the implied assertion in the statement that they, and not the Tribal Council acting as the governing body for the Tribe, voted to place, or cause to be placed, the described barriers on the Roadways. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants dispute the portion of the statement that

they have acted unlawfully because the Plaintiffs do not have valid easements to cross trust lands, and because the Roadways are not listed on the NTTFI. J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G.

263.    Many other landowners, who are unable to get to and from their properties due to the barricades on the Roadways, declined to be named as a plaintiff in this lawsuit for fear of retaliation.  Likewise, many named Plaintiffs were too fearful of retaliatory acts if they signed a declaration in support of their motions for injunctive relief. (B. Hubing Decl. ¶ 10.)

**Response**: Disputed in part. The Defendants do not dispute the unnamed landowners or Plaintiffs' self-stated mental impressions, but do dispute any assertion in this paragraph that they have threatened or taken any retaliatory actions for simple court filings or participation in this lawsuit. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

264.    The Plaintiffs who did agree to be named also fear for their physical safety and fear that their homes will be destroyed or damaged by the Defendants or Defendants' associates for Plaintiffs' involvement in this case. (D. Pollard Decl. ¶ 12; J. Spanton Decl. ¶ 13.)

**Response**: Disputed in part. The Defendants do not dispute the Plaintiffs' self-stated – even if completely unfounded – mental impressions, but do dispute any assertion in this paragraph that the Defendants, or any of their "associates" have threatened or have taken any retaliatory actions for simple court filings or participation in this lawsuit. G. Thompson Aff. ¶¶ 31-32; J. Allen Aff. ¶¶ 34-35.

265.    Plaintiffs and other similarly situated residents or landowners or land possessors have been irreparably harmed, continue to be irreparably harmed, and will be further irreparably harmed by the Defendants' actions of barricading the Roadways. (D. Pollard Decl. ¶¶ 13, 16; J. Spanton Decl. ¶¶ 14,16; R. Pearson Decl. ¶¶ 18, 22-24; J. Kilger Decl. ¶¶ 9, 17; M. Hornbostel

Decl. ¶¶ 1-12; M. Hunt Decl. ¶¶ 1-35; M. Possin Decl. ¶¶ 1-15; S. Fermanich Decl. ¶¶ 1-24; J. Walsh Decl. ¶¶ 1-11; J. Hunt Decl. ¶¶ 1-33; P. Kester Decl. ¶¶ 1-29.)

**Response**: The Defendants object that this statement provides a legal conclusion or argument that does not require a response. To the extent a response is required, disputed. The Defendants dispute the portion of this statement that implies that they, and not the Tribal Council acting as the governing body for the Tribe, are responsible for voting to place the complained-of barriers. J. Allen Aff. ¶¶ 10-12, Ex. B; J. Allen Aff. ¶¶ 29-31, Ex. H. The Defendants also dispute that it is the actions of the Defendants, and not the actions of the homeowners, the Town of Lac du Flambeau, or the Title Insurance Companies that have caused the alleged past and alleged ongoing harm through their failure to secure and maintain valid rights-of-way to their properties. B. Hubing Decl. ¶ 21, Ex. J; J. Peterson Aff. ¶ 11; J. Allen Aff. ¶ 28, Ex. G; J. Peterson Aff. ¶¶ 12-19, Ex. A-D. The Defendants especially dispute this in light of the extensive efforts taken by the Tribe, through its Tribal Council, to protect the health, safety, and welfare of the affected homeowners. T. Bill Aff. ¶¶ 10-28, Ex. A.

266.    U.S. Representative Thomas P. Tiffany, in a February 23, 2023 Letter to Defendant Johnson, stated that barricading the roads at issue in this case is an "unprecedented action [] putting the health, safety, and well-being of dozens of town residents at risk" and "cut[s] off access to these vital roads in the dead of winter [in Northern Wisconsin]." (B. Hubing Decl. ¶ 26, Ex. O.)

**Response**: Undisputed that the quoted language, with alterations, appears in the cited letter.

Dated: April 10, 2023                        RESPECTFULLY SUBMITTED:

                                            /s/ Andrew Adams III

Andrew Adams III (WI #1052371)
Leah K. Jurss (MN #0399549)
Samantha Hermsen (MN #0401819)
Lorenzo E. Gudino (WI #1115753)
Hogen Adams PLLC
1935 County Road B2 W., Suite 460
Saint Paul, MN 55113-2722
Phone: (651) 842-9100
Email: aadams@hogenadams.com
        ljurss@hogenadams.com
        shermsen@hogenadams.com
        lgudino@hogenadams.com