IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DONALD POLLARD, *et al.*,

                      Plaintiffs,

    v.

JOHN JOHNSON, *et al.*,

                      Defendants.

OPINION and ORDER

23-cv-135-wmc

---

    This case arises out of a decision by the Lac du Flambeau Band of the Lake Superior Chippewa Indians to place blockades on four roads within the Lac du Flambeau Indian Reservation, which provide access to property and homes on the Reservation owned by non-Indians. Although the Town of Lac du Flambeau had been maintaining the roads for several years, neither the Town nor individual property owners have a valid, right-of-way easement on those roads, at least according to the Tribe. Plaintiffs are a group of individuals who use those roads to access their homes, each of which is located within the boundaries of the Reservation. In apparent acknowledgement that the Tribe would be immune from suit, plaintiffs named as defendants the 12 individual members of the Lac du Flambeau Tribal Council after Council members partially blocked access to the roads for six weeks during February and March 2023.

    Plaintiffs also filed a motion for a preliminary injunction (dkt. ##9, 27), seeking an order prohibiting defendants from restricting access to the four roads during the pendency of this lawsuit. Defendants oppose that motion, and filed their own motion to dismiss for lack of subject matter jurisdiction, tribal sovereign immunity, and failure to

state a claim (dkt. #37).  The court held oral argument on the motions on June 7, 2023, and now grants defendants' motion to dismiss.  Plaintiffs have failed to plead a viable, federal cause of action, and the court declines to exercise supplemental jurisdiction over their state law claims.  Because the court is dismissing all of plaintiffs' claims, the court will deny plaintiffs' motion for a preliminary injunction as moot.

BACKGROUND[1]

The four roads at issue were built more than 50 years ago and provide access to property and homes owned by non-Indians living within the boundaries of the Lac du Flambeau Indian Reservation.  The land on which the roads were built is owned by the United States in trust for the Lac du Flambeau Tribe.  In the 1960s, the Bureau of Indian Affairs granted 50-year, right-of-way easements on the roads to various individuals under the Indian Right-of-Way Act, 25 U.S.C. §§ 323–28.  These easements were later assigned to the Town of Lac du Flambeau.  Although the Town has been maintaining these roads as public for several years, its right-of-way easements on all four roads expired between 2011 and 2018, and the easements have not been renewed.

In January 2023, the Lac du Flambeau Tribal Council decided to assert its sovereign rights over the roadways.  The Tribal Council sent letters to the Town and individual

---

[1] These background facts are based on the allegations of plaintiffs' complaint viewed in the light most favorable to them, as modified by the parties' proposed facts and responses submitted with the preliminary injunction filings and additional evidence presented at the June 7, 2023, hearing. *See* Fed. R. Civ. P. 12(b)(1); *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (In considering subject matter jurisdiction, the court must accept all well-pleaded facts within the complaint as true, but may also consider evidence outside of the pleadings to ensure jurisdiction is proper.)

homeowners informing them that: any right-of-way on the roads had expired five to more than 10 years ago; the Town and homeowners were considered in trespass; and the Tribe reserved the right to limit access to the roads, including by posting signs, road checkpoints and physical barriers. (Dkt. #43-3, at 1.) The Tribe, BIA and Town were unable to agree on terms of a new easement, and members of the Tribal Council erected barriers across the four roads. The barriers were in place between January 31 and March 13, 2023. Since March 13, 2023, the roadways have been open pursuant to negotiated, temporary access permits issued by the Tribe to the Town.[2]

In the meantime, plaintiffs—a group of individuals that rely on the roads to access their land and homes within the Reservation—filed this lawsuit against the 12 individual members that make up the Lac du Flambeau Tribal Council. During the 6-week period that the barriers were in place across the four roads, plaintiffs were allegedly permitted to leave via these roadways only for medical appointments or emergencies and were forced to call Tribal police to unlock chains blocking the roads. Plaintiffs allege that the barriers caused anxiety, delayed medical care, and denied therapy for a special needs child, among other injuries.

In their amended complaint, plaintiffs assert the following claims: (1) declaratory judgment that defendants' barricades violate the Federal-Aid Highway Act, 23 U.S.C. § 101 *et seq.*, the Tribal Transportation Program, 23 U.S.C. §§ 201–202, and implementing regulations at 25 C.F.R. Part 170; (2) anticipated private nuisance; (3) anticipated public

---

[2] The last negotiated permits were set to expire on June 13, 2023. The court has received no update from the parties regarding the status of the roads since that date.

nuisance; and (4) implied easement. (Dkt. #26.) Plaintiffs also filed a motion for preliminary injunction based on their declaratory judgment and nuisance claims.[3]

After plaintiffs filed this lawsuit, the Tribe also asked the BIA to remove the four roads from the federal Tribal Transportation Program's National Tribal Transportation Facilities Inventory (NTTFI), and to act on behalf of the Tribe to pursue remedies against the Town for trespass. After determining that the Tribe had never received public funding for those roads, the BIA removed them from the NTTFI. Defendants then filed a motion to dismiss, arguing that: (1) because the four roads were removed from the inventory, plaintiffs had no federal claim and this court lacked subject matter jurisdiction; (2) defendants were protected by tribal sovereign immunity; and (3) both the United States and Lac du Flambeau Band were necessary parties that could not be joined.

Finally, the United States filed an amicus brief in support of defendants' motion to dismiss and in opposition to plaintiffs' motion for a preliminary injunction, also arguing that plaintiffs' claims must be dismissed because the United States, as the owner of the land underlying the roads, is a necessary and indispensable party that cannot be joined because of its sovereign immunity. (Dkt. #40-1.) The United States subsequently filed a trespass action against the Town of Lac du Flambeau, asserting claims for trespass and ejectment under the Indian Right-of-Way Act. *United States v. Town of Lac du Flambeau*, 23-cv-335-wmc.

---

[3] Plaintiffs abandoned the implied easement claim in their brief in opposition to defendants' motion to dismiss. (Dkt. #55, at 1.)

OPINION

Before considering plaintiffs' motion for preliminary injunctive relief, the court must consider the threshold question as to its subject matter jurisdiction over the parties' disputes. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021) ("[T]he first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute —in short, that it has jurisdiction over the subject matter."); *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019) ("Subject-matter jurisdiction is the first issue in any case.")

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). Shortly after this case was filed, the court directed plaintiffs to submit a supplemental jurisdiction statement explaining their causes of action and the basis for this court's exercise of subject matter jurisdiction. (Dkt. #21.) Plaintiffs responded by citing the federal-question jurisdiction statute, 28 U.S.C § 1331, as the basis of this court's subject matter jurisdiction over their declaratory judgment claim. Under § 1331, federal district courts have original jurisdiction over civil actions "arising under" the Constitution, laws, or treaties of the United States.

"[T]he term 'arising under' carries special meaning" under § 1331, and generally means that the claimant is suing under a federal law that creates a cause of action, either expressly or by implication. *E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 959 (7th Cir. 2021); *see also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979); Wright & Miller, *Federal Practice and Procedure*

5

§ 3562. Indeed, "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law *creates* the cause of action." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (emphasis added).

Here, plaintiffs point to the Federal-Aid Highway Act of 1956, 23 U.S.C. § 101, *et seq.*, the Tribal Transportation Program, and the listing of the four roads on the NTTFI as the basis for their federal claim against defendants. However, plaintiffs' reliance on the Federal-Aid Highway Act and the associated federal programs are not sufficient to establish federal-question jurisdiction. For a case to satisfy § 1331 by "arising under" federal law, it is not enough for a plaintiff to merely call upon a federal statute in their complaint. *E. Cent. Illinois Pipe Trades Health & Welfare Fund*, 3 F.4th at 959, 961. Plaintiffs' complaint "implicates federal law[, b]ut it does not necessarily follow that federal law has also created a cause of action to enforce this doctrine in federal court." *Id.* Plaintiffs must point to a provision in the Act that creates or implies a cause of action. Only "when federal law creates a private right of action" does "the claim arise[] under federal law," and this court "possess federal-question jurisdiction under § 1331." *Id.* (citation omitted); *see also Int'l Union of Operating Engineers, Loc. 150, AFL-CIO v. Ward*, 563 F.3d 276, 281 (7th Cir. 2009) ("[W]hen the basis of the action is a federal statute, a federal cause of action must exist as well for a federal court to hear a given claim.") Ultimately, the existence of a private right of action in a federal statute is a question of congressional intent. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Statutory intent [regarding the existence of a private remedy] is determinative."). Given this exclusively legislative role, courts may not create a private remedy without evidence of Congress' intent to do so. *Id.* at 286–87.

The Tribal Transportation Program on which plaintiffs rely is part of the Federal-Aid Highway Program, and is jointly administered by the BIA and Federal Highway Administration. Both agencies allocate program funds among tribes for use in transportation improvement projects and review progress on road projects. 23 U.S.C. § 202(a). There are no enforcement provisions in the Federal-Aid Highway Act, the Tribal Transportation Program or its implementing regulations. Indeed, the only provisions addressing disputes at all relate to dispute resolution procedures between tribes and the BIA. 25 C.F.R. § 170.934. And no provision suggests intent by Congress to create a federal cause of action or any means of federal judicial enforcement of the program, let alone to authorize a cause of action that could be enforced by private individuals against a tribe, tribal council or individual tribal council members in federal court. Rather, Congress's intent in passing the Federal-Aid Highway and Tribal Transportation Program was to assist tribes in providing safe and adequate transportation and public road access to and within Indian lands, 23 U.S.C. § 202, while at the same time respecting Tribal self-determination and self-governance. 25 C.F.R. §§ 170.2(h), 170.102. Nothing in the Act suggests that the program is intended to promote or protect access rights of the public or individual citizens who want to traverse Indian lands. Given Congress's straightforward statement of purpose and the lack of a congressionally authorized right of action, plaintiffs cannot rely on the Federal-Act Highway Act or Tribal Transportation Program to establish federal-question jurisdiction.

Nor can plaintiffs rely on the Declaratory Judgment Act as an independent source of federal-question jurisdiction. The Declaratory Judgment Act "'presupposes the existence

of a judicially remediable right' and thus cannot be pursued without a predicate right of action." *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) (citation omitted). The Act bestows upon federal courts the authority to exercise discretionary jurisdiction over declaratory judgment actions, 28 U.S.C. § 2201(a), but does not *itself* confer subject matter jurisdiction upon the federal courts. For any suit brought under the Act, an independent source of federal jurisdiction must exist -- such as the existence of diversity of citizenship or a federal question. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950); *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009). Here, plaintiffs have identified no "predicate right of action" to support their request for declaratory relief.

Having identified no federal law creating a federal cause of action, plaintiffs point out that their state law claims may nonetheless be sufficient to invoke federal-question jurisdiction if they implicate federal issues. The U.S. Supreme Court has recognized that federal question jurisdiction may still exist if the plaintiff raises a state law claim that (1) necessarily raises a stated federal issue, (2) which is actually disputed and substantial, and (3) which a federal court could consider "without disturbing any congressionally approved balance" between state and federal power. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). But this so-called "*Grable* exception" only applies to a "special and small category" of cases that present "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous ... cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699–700 (2006) (citation and quotation marks omitted).

8

For example, in *Grable*, the plaintiff brought a state law claim to quiet title in real property, claiming that the IRS failed to provide the plaintiff with the notice required by a federal statute. 545 U.S. at 310–11. In finding federal jurisdiction, the Supreme Court emphasized that "the meaning of the federal statute is thus an essential element of [the] quiet title claim" and "appears to be the only legal or factual issue contested in the case." *Id.* at 315. Accordingly, the Court held that "the meaning of the federal tax provision is an important issue of federal law that sensibly belongs in federal court." *Id.* In so holding, the Court emphasized the narrowness of its holding, stating that the exercise of federal jurisdiction would have only a "microscopic effect on the federal-state division of labor" because "it will be the rare state title case that raises a contested matter of federal law." *Id.* In contrast, in *Empire Healthchoice,* the Court found that a dispute over the meaning of terms in a federal health insurance contract was "fact-bound and situation-specific" and could not "be squeezed into the slim category *Grable* exemplifies." 547 U.S. at 701; *see also Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 747 (9th Cir. 2022) (rejecting argument that plaintiffs' tort claims related to global warming required resolution of substantial federal issues).

Plaintiffs contend that their state law public and private nuisance claims fall under this narrow *Grable* exception because they raise substantial issues relating to federal Indian law. Plaintiffs emphasize the federal nature of Indian law generally and assert that federal law governs whether an Indian tribe has the right to exclude non-Indians from their land. They also argue that defendants' alleged violation of the Federal-Aid Highway Act is relevant to their nuisance claims. But these arguments are not persuasive.

Plaintiffs' nuisance claims are based on allegations that defendants have deprived them access, use and enjoyment of their homes and properties by barricading the four roads, and that defendants are likely to do so again in the future. (Plts.' Am. Cpt. (dkt. #26) ¶¶ 157–99.) The elements of their state-law nuisance claims do not necessarily require resolution of any substantial federal issue. That defendants will no doubt invoke the Indian Right-of-Way Act, tribal sovereignty or other federal Indian law as a defense to plaintiffs' nuisance claims is not sufficient to bring plaintiffs' state-law claims within the *Grable* exception. "Despite the pervasive influence of federal law in Indian affairs, federal court jurisdiction over cases involving Indians and Indian affairs is not automatic," *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) (citation omitted), and defenses invoking federal law do not transform a state-law claim into a federal case. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). This is true even when the parties agree that the anticipated federal defense is the only disputed issue. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

Finally, plaintiffs argue that their nuisance claim will require the court to resolve federal issues relating to the Federal-Aid Highway Act and Tribal Transportation Program, because defendants' violation of those federal laws supports plaintiffs' nuisance claims. However, plaintiffs cite no legal authority suggesting that failure to keep a road public under the Federal-Aid Highway Act would constitute a public or private nuisance. And permitting plaintiffs to proceed on such a claim would effectively create a "back door" to a de facto private cause of action to enforce those federal laws despite Congress declining to do so. Absent legal authority, therefore, the court declines to permit what would amount

10

to the manipulation of federal-question jurisdiction. *Cf. Bauer v. Elrich*, 8 F.4th 291, 299 (4th Cir. 2021) ("plaintiffs cannot evade … the lack of a Congressionally authorized right of action [to enforce a federal statute]" by invoking state-law injunction claim). As the Seventh Circuit explained in *E. Cent. Illinois Pipe,* "Without a federal cause of action—and outside the rare circumstance described in *Grable*—a federal court cannot exercise federal question jurisdiction and has no authority to adjudicate the dispute under § 1331." 3 F.4th at 958.

Having identified no viable federal claim and plaintiffs' state law claims not falling under the *Grable* exception, the court must dismiss their federal claim for lack of subject matter jurisdiction. At this relatively early stage of litigation, the court also declines to exercise supplemental jurisdiction over plaintiffs' state law claims, 28 U.S.C. § 1367(c), and having no subject matter jurisdiction over their remaining state law claims in this case, plaintiffs' motion for a preliminary injunction will be dismissed as moot.

ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt. #37) is GRANTED, and plaintiffs' federal claim is DISMISSED for lack of subject matter jurisdiction.

2) The court declines to exercise supplemental jurisdiction over plaintiffs' state law claims, and those claims are DISMISSED WITHOUT PREJUDICE.

3) Plaintiffs' motions for preliminary injunctive relief (dkt. #9 and dkt. #27) are DENIED AS MOOT.

4) The clerk of court is directed to enter judgment and close this case.

Entered this 15th day of August, 2023.

                                  BY THE COURT:

                                  /s/

                                  _____
                                  WILLIAM M. CONLEY
                                  District Judge